**PAUL HASTINGS LLP**
Elizabeth L. Brann (SBN 222873)
elizabethbrann@paulhastings.com
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone:  858-458-3000
Facsimile:  858-458-3005

Bruce M. Wexler*
brucewexler@paulhastings.com
Merri C. Moken*
merrimoken@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone:  212-318-6000
Facsimile:  212-319-4090
* Admitted pro hac vice

*Attorneys for Defendants BioNTech
SE and BioNTech US, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Allele Biotechnology and Pharmaceuticals, Inc.,<br><br>                    Plaintiff,<br><br>v.<br><br>Pfizer Inc.; BioNTech SE; BioNTech US, Inc.; and DOES 1-30<br><br>                    Defendants. | Case No. 20-cv-01958-H (AHG)<br><br>**DEFENDANTS BIONTECH SE AND BIONTECH US'S  ANSWER AND AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT OF PLAINTIFF ALLELE BIOTECHNOLOGY AND PHARMACEUTICALS, INC.** |

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

1   Defendants BioNTech SE ("BioNTech SE") and BioNTech US, Inc.

2   ("BioNTech US"), by their undersigned attorneys, hereby answers the First Amended

3

4   Complaint of Allele Biotechnology and Pharmaceuticals, Inc., ("Allele") with respect

5   to BioNTech SE and BioNTech US, as follows.  Any allegations not expressly

6

7   admitted are hereby denied, including allegations directed to Pfizer which are the

8   subject of a responsive pleading filed by Pfizer.  This answer follows the numbering

9   provided in Allele's First Amended Complaint.  To the extent the section headings of

10

11   Allele's First Amended Complaint contain allegations, those allegations are hereby

12   denied.

13

14       1.      This action arises under the patent laws of the United States, 35 U.S.C. §

15   1 *et seq.*, based on Defendants' infringement of United States Patent No. 10,221,221
    ("the '221 Patent").

16       **ANSWER:**  The allegations in paragraph 1 purport to characterize Allele's

17

18   First Amended Complaint, which speaks for itself, and set forth legal conclusions to

19   which no response is required.  To the extent a response is required, denied that

20   BioNTech SE and BioNTech US infringe the '221 patent and denied that Allele is

21

22   entitled to any of the relief that it seeks.

23                          **<u>INTRODUCTION</u>**

24

25       2.      Prior to the current COVID-19 crisis, Allele had already developed the
    revolutionary mNeonGreen. mNeonGreen belongs to Allele, as does the '221 Patent
26   covering the exclusive right to use mNeonGreen. mNeonGreen is an artificial
27   fluorescent that Allele painstakingly developed over many years through the genius of
    its inventors. It is the world's brightest monomeric fluorescent protein, dubbed by
28

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

third-party industry veterans as the "King of fluorescent proteins." A prominent university used mNeonGreen to make the "gold standard" COVID-19 assay for effectively testing against vaccine candidates, which Pfizer and BioNTech readily took for their own unauthorized commercial testing and development.

**ANSWER:**  BioNTech SE and BioNTech US deny that mNeonGreen was "revolutionary," and lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in the first four sentences of paragraph 2 and therefore deny them.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 2.

3.     Defendants have made, and upon information and belief are continuing to make, pre-clinical, clinical, and post-clinical use of mNeonGreen in a neutralization assay, to (a) rapidly winnow an unmanageable number of vaccine candidates down to four (4) vaccine candidates; (b) select their BNT162 RNA based COVID-19 vaccine candidate; (c) conduct Phase I-III clinical trials; (d) secure rapid FDA authorization for distribution of a commercial vaccine; (e) validate the commercial vaccine; and (f) further test the commercial vaccine, for example, against new COVID-19 strains.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of Paragraph 3.

4.     Pfizer and BioNTech's approach to a COVID-19 vaccine relied on an unproven, gene-based biotechnology using messenger ribonucleic acid (mRNA).

**ANSWER:**  BioNTech SE and BioNTech US admit that the Pfizer-BioNTech COVID-19 vaccine uses mRNA.  BioNTech SE and BioNTech US lack an understanding of what Allele means by use of the phrase "gene-based biotechnology"

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

and therefore deny the allegations.  BioNTech SE and BioNTech US otherwise deny

the allegations of paragraph 4.

5.     BioNTech had been trying for over a decade to create such an mRNA based therapeutic, but had not launched a single commercial product in that timeframe. Similarly, BioNTech and Pfizer had previously attempted to develop an mRNA flu vaccine without success.  On information and belief, Defendants did not use mNeonGreen in those prior unsuccessful efforts.

**ANSWER:**  BioNTech SE and BioNTech US lack an understanding of what

Allele means by use of the phrase "such an mRNA based therapeutic" and "in those

prior unsuccessful efforts" and deny the allegations of paragraph 5.

6.     Only through use of mNeonGreen were Defendants able to research, develop, and test their SARS-CoV-2 vaccine candidates at lightspeed, and be first to market.  Allele's mNeonGreen has been an instrumental driver in selecting the most potent vaccine candidate, which has saved precious time and lives as a result. Defendants took advantage of the benefits brought by mNeonGreen to facilitate a rapid proof of concept during the discovery, research and further development of products, entry into clinical trials, regulatory approval, and sales.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 6.

7.     Being first to market earned Defendants an immediate $445 million in grants.  As distribution began, Pfizer raised its 2021 projections to $60 billion total revenue, $15 billion of which is from the resulting COVID-19 vaccine (leading to as much as $4.35 billion in profit off the vaccine).  The benefits of this vaccine throughout the world, particularly when time is of the essence, stem from Defendants' misappropriation of Allele's breakthrough (and patented) mNeonGreen technology as stated by their own collaborators: "The icSARS-CoV-2-mNG reporter virus allows

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

the use of fluorescence as a surrogate readout for viral replication.  Compared with a standard plaque assay or median tissue culture infectious dose (TCID50) quantification, the fluorescent readout shortens the assay turnaround time by several days.  In addition, the fluorescent readout offers a quantitative measure that is less labor-intensive than the traditional means of viral titer reduction.  Furthermore, the mNG-virus-based assay could be automated in a high-throughput format to screen compounds against viral replication."

**ANSWER:**  BioNTech SE and BioNTech US lack information sufficient to form a belief regarding the allegations of the second sentence of paragraph 7 and therefore deny them.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 7.

8.      The authors, in the same publication, go on to state that "the stability of the mNG reporter virus allows it to be used for longer-term studies and *in vivo* without fear of losing its fluorescent marker. Thus, this reporter virus offers a huge advantage for the research community and pharmaceutical companies to develop therapeutics for COVID-19." In other words, mNeonGreen is the best tool for the application, including because of savings in labor and time, as well as sensitivity and longevity of the signal to be measured over time. Thus, the Defendants' use of mNeonGreen made possible the rapid identification and development of the leading vaccine against COVID-19, providing a significant advantage in the market and stemming the devastating worldwide effects of the virus.

**ANSWER:**  The allegations of the first two sentences of paragraph 8 purport to quote a document, which speaks for itself.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 8.

9.      Allele's mNeonGreen is a pioneering breakthrough in fluorescent protein technology, the latest in its history of innovation. mNeonGreen is a broad and flexible discovery-inducing innovation in biotechnology and medicine, allowing scientists and

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

researchers to see biological subjects quickly, clearly, and with a new level of certainty—something of increased importance for therapeutics targeting COVID-19. mNeonGreen's versatility provides a wide array of uses, for example, high throughput studies in the tracking of proteins in a cell to research cell development in growing worms, a use with no relationship to veterinary or medical advancements.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations in the first and second sentences of paragraph 9.  BioNTech SE and BioNTech US lack knowledge and information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 9 and therefore deny them.

10.    Since 1999, Allele has been a leader in developing technology and research tools for such clinical and therapeutic uses. Among other achievements, Allele's advancements have been directed to RNA interference, Fluorescent Proteins, Induced Pluripotent Stem Cells (iPSCs), Genome Editing, and camelid derived Single Domain Antibodies, including those recently developed against SARS-CoV-2 and its UK and South African variants.

**ANSWER:**  BioNTech SE and BioNTech US lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore deny them.

11.    More recently since January of 2020, Allele has been actively engaged in combating COVID-19, initiating impactful diagnostic and therapeutic platforms premised on speed, accuracy, and sensitivity. mNeonGreen is a broad and flexible discovery-inducing innovation in biotechnology and medicine, allowing scientists and researchers to see what could not clearly and quickly be seen before—something of increased importance for therapeutics targeting COVID-19.

**ANSWER:**  BioNTech SE and BioNTech US lack knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

paragraph 11 and therefore deny them.  BioNTech SE and BioNTech US otherwise

deny the allegations of paragraph 11.

12.     Pfizer and BioNTech's infringing uses are varied and widespread, and
include, by way of example and without limit: (1) Screening at the research and
development stage to test the potency, screening for candidates, and narrowing to lead
candidates, (2) Preclinical Investigatory Uses to bring the lead candidates toward
clinical evaluation, (3) Clinical Trial Uses, and, on information and belief, (3) Post-
Approval Marketing Uses. Plaintiff Allele brings this lawsuit because Defendants did
not so much as pick up the phone and seek to obtain the rights to use Allele's valuable
intellectual property. Instead, Defendants made the deliberate and calculated decision
to infringe the '221 patent-in-suit, in order to gain a successful "full speed ahead"
advantage, which brought them first to market both domestically and internationally.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph

12.

### JURISDICTION AND VENUE

13.     This is an action for patent infringement arising under the patent laws of
the United States, 35 U.S.C. § 271.

**ANSWER:**  The allegations of paragraph 13 purport to characterize Allele's

First Amended Complaint, which speaks for itself, and state legal conclusions, to

which no response is required.  To the extent a response is required, BioNTech SE and

BioNTech US deny that either has infringed the '221 patent and further deny that

Allele is entitled to any of the relief that it seeks.  BioNTech SE and BioNTech US

further deny that Allele states a claim for patent infringement arising under the Patent

Laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1338(a).

**ANSWER:** The allegations of paragraph 14 state legal conclusions to which no response is required. To the extent a response is required, BioNTech SE and BioNTech US do not contest subject matter jurisdiction for purposes of this action.

15. This Court has personal jurisdiction over Defendants because Defendants regularly conduct business within, and specifically direct their business activities to, the State of California and the Southern District of California ("this District"). Defendants have purposefully availed themselves of the opportunity to conduct business in this state through systematic and continuous dealings in this state. Defendants' actions that give rise to personal jurisdiction include, but are not limited to the following: making and using infringing products in this State and in this District, knowing and intending that the infringing products would be used in this District, deriving substantial revenue from the use of infringing products within this District, and expecting their infringing actions to have consequences in this District.

**ANSWER:** The allegations of paragraph 15 state legal conclusions to which no response is required. To the extent a response is required, the BioNTech SE and BioNTech US deny that either has regularly conducted business within, and specifically directed their business activities to, the State of California and the Southern District of California; that either has purposefully availed itself of the opportunity to conduct business in this state through systematic and continuous dealings in this state; that either has made or used infringing products in this State and in this District; that either knows or intends that the infringing products would be used in this District; that either derives substantial revenue from the use of infringing products within this District; and that either expects infringing actions to have

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

consequences in this District.  BioNTech SE and BioNTech US further deny that either make or use infringing products in this State or in this District.

16.     Venue is proper as to BioNTech SE in this judicial district pursuant to, *inter alia*, 28 U.S.C. § 1391(c)(3).

**ANSWER:**  The allegations of paragraph 16 state a legal conclusion to which no response is required.

17.     Venue also is proper as to Defendants under 28 U.S.C. § 1400(b). Each Defendant has committed, induced others to commit, or contributed to others committing, acts of infringement in this District, including by conducting Phase I, II, and III clinical trials of the vaccine within the United States and overseas, utilizing mNeonGreen with over 40,000 participants and study sites including in San Diego County, under Clinical Study Identifier NCT04368728. Pfizer has a regular and established place of business in La Jolla, California which, on information and belief, is a 25-acre campus with over half a million square feet of buildings and "one of the largest concentrations of academic and biotechnology institutions in the world." BioNTech has a regular and established place of business at 11535 Sorrento Valley Rd #400, San Diego, CA, namely its 15,000 square foot US laboratory, research and development facility, which it identified as of January 2020 as its U.S. research and development hub.

**ANSWER:**  The allegations in the first sentence of paragraph 17 state a legal conclusion to which no response is required.  To the extent a response is required, BioNTech SE and BioNTech US deny the allegations in the first sentence of paragraph 17.  BioNTech SE and BioNTech US deny the allegations in the second sentence of paragraph 17, and deny that either has committed any acts of infringement.  BioNTech SE and BioNTech US lack knowledge and information

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

sufficient to form a belief regarding any regular and established place of business of

Pfizer and therefore deny the allegations.  The allegations in the fourth sentence of

paragraph 17 state a legal conclusion to which no response is required.  To the extent

a response is required, BioNTech SE and BioNTech US deny the allegations.

BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 17.

## THE PARTIES

18.     Allele is a California corporation with its principal place of business
being, 6404 Nancy Ridge Drive, San Diego, California 92121.

**ANSWER:**  BioNTech SE and BioNTech US lack knowledge and information

sufficient to form a belief regarding the allegations of paragraph 18 and therefore deny

them.

19.     Allele was founded in 1999 and is recognized as a leading developer of
technologies for clinical and therapeutic use. These include research tools for inducing
discoveries in a variety of spaces in the life-sciences, including but not limited to
investigation, winnowing, and validation of drug and vaccine candidates, as in the
ever-changing race to prevent, treat, and cure COVID-19.

**ANSWER:**  BioNTech SE and BioNTech US lack knowledge and information

sufficient to form a belief as to the truth of the allegations of when Allele was founded

or what unnamed persons "recognized" and therefore denies the same.  BioNTech SE

and BioNTech US otherwise deny the allegations of paragraph 19.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

20.     Defendant Pfizer is a company organized and existing under the laws of the State of Delaware with its principal place of business at 235 East 42nd Street, New York, NY 10017.

**ANSWER:**  BioNTech SE and BioNTech US lack knowledge and information sufficient to form a belief regarding the allegations of paragraph 20 and therefore deny them.

21.     Defendant BioNTech SE, is a company organized and existing under the laws of Germany, traded in the United States on the NASDAQ, with its principal place of business located in An der Goldgrube 12 Mainz, 55131 Germany. Defendant BioNTech US, Inc. is a company organized and existing under the laws of the State of Delaware with, on information and belief, its principal place of business located in Cambridge, Massachusetts.

**ANSWER:**  BioNTech SE admits the allegations of the first sentence of paragraph 21.  BioNTech US admits the allegations of the second sentence of paragraph 21.

22.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 30, inclusive, are unknown to Allele, who therefore sues said defendants by such fictitious names. Allele will amend this Complaint to state their true names and capacities when the same is ascertained. Allele is informed and believes that at all times herein mentioned, each defendant named herein was the agent of each of the remaining defendants and, in doing the things herein alleged, was acting within the course and scope of said agency. Any reference in this Complaint to the actions or inactions of any defendant, whether such reference is made to such defendant by specific name or otherwise, is also a reference to the actions or inactions of DOES 1 through 30, inclusive.

**ANSWER:**  BioNTech SE and BioNTech US deny that any of DOES 1 through 30 are properly named as defendants, and otherwise lack knowledge and information

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

sufficient to form a belief regarding the allegations of paragraph 22 and therefore deny them.

23.     Defendant Pfizer since early 2020 has been, among other things, engaged with BioNTech in the development of their BNT162 MRNA-based vaccine, which was first narrowed from a larger number of candidates using a research tool that is based fundamentally on Allele's mNeonGreen. Through continued unauthorized use of mNeonGreen, Defendants' vaccine candidate was further evaluated, and eventually authorized for use by the FDA on December 11, 2020 after, on information and belief, clinical trials involving at least about 40,000 participants.

**ANSWER:**  BioNTech SE and BioNTech US admit that in March 2020 a

collaboration with Pfizer was announced to develop a COVID-19 vaccine.  BioNTech

SE and BioNTech US further admit that the Pfizer-BioNTech COVID-19 vaccine is

an mRNA-based vaccine, and received an Emergency Use Authorization from the

FDA on December 11, 2020.  BioNTech SE and BioNTech US otherwise deny the

allegations of paragraph 23.

24.     At all times mentioned herein, Defendants, and each of them, were the agents, servants, co-conspirators, or employees of one another, and the acts and omissions herein alleged were done or suffered by them, acting individually and through or by their alleged capacity, within the scope of their authority. Each of the defendants aided and abetted and rendered substantial assistance in the accomplishment of the acts complained of herein. In taking the actions, as particularized herein, to aid and abet and substantially assist in the commission of the misconduct complained of, each defendant acted with an awareness of his, her or its primary wrongdoing and realized that his, her or its conduct would substantially assist in the accomplishment of that misconduct and was aware of his, her or its overall contribution to, and furtherance of the conspiracy, common enterprise, and common course of conduct. Defendants' acts of aiding and abetting included, inter alia, all of

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

1
2

the acts each defendant is alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of herein.

3

**ANSWER:**  The allegations of paragraph 24 state legal conclusions to which

4

no response is required.  To the extent a response is required, BioNTech SE and

5
6

BioNTech US deny the allegations of paragraph 24.

7

## FACTS

8

### Background

9

10
11
12

25.     Messrs. Nathan C. Shaner, Gerard G. Lambert, Yuhui Ni, and Jiwu Wang are joint inventors (collectively "Inventors") of the '221 Patent, entitled "Monomeric yellow-green fluorescent protein from cephalochordate" and which issued on March 5, 2019. A true and correct copy of the '221 Patent is attached hereto as Exhibit 1.

13

**ANSWER:**  BioNTech SE and BioNTech US admit that the face of the '221

14

patent lists Nathan C. Shaner, Gerard G. Lambert, Yuhui Ni, and Jiwu Wang as

15
16

inventors.  BioNTech SE and BioNTech US further admit that on its face, the '221

17

patent is entitled "Monomeric yellow-green fluorescent protein from cephalochordate"

18
19

and identifies an issuance date of March 5, 2019.  BioNTech SE and BioNTech US

20

further admit that Exhibit 1 to the First Amended Complaint is a document that

21

purports to be a copy of the '221 patent.  BioNTech SE and BioNTech US otherwise

22
23

deny the allegations of paragraph 25.

24

25
26

26.     The '221 Patent will expire on or about December 8, 2033 if all maintenance fees are timely paid (*i.e.* in approximately 13 years).

27
28

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

**ANSWER:**  Paragraph 26 states legal conclusions to which no response is required.

27.     Although the invention(s) set forth in the '221 Patent are best described by its claims, the '221 Patent is generally directed to isolated nucleic acid sequences encoding a monomeric green/yellow fluorescent proteins, and fragments and derivatives thereof.

**ANSWER:**  Paragraph 27 purports to characterize the '221 patent, which speaks for itself.  To the extent a response is required, BioNTech SE and BioNTech US admit that the claims of the '221 patent are required to particularly point out and distinctly claim the subject matter which the putative inventor or joint inventors regard as the invention, and otherwise deny the allegations of paragraph 27.

28.     On April 28, 2014, the Inventors assigned the yet-to-be-issued '221 Patent to Allele.  A true and correct copy of the assignment is attached hereto as Exhibit 2.

**ANSWER:**  BioNTech SE and BioNTech US admit that a document purporting to be an assignment of application no. 13/950,239 from Nathan C. Shaner, Gerard G. Lambert, Yuhui Ni, and Jiwu Wang to Allele Biotechnology & Pharmaceuticals, Inc. is attached to the First Amended Complaint as Exhibit 2, which document speaks for itself.  BioNTech SE and BioNTech US otherwise lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 28 and therefore deny them.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

29.     The claims of the '221 Patent encompass Allele's mNeonGreen product, which is a fluorescent protein used as a biological tag in genetic engineering work. mNeonGreen is a monomeric protein that was derived from a tetrameric wild-type yellow-green fluorescent protein isolated from the cephalochordate *Branchiostoma lanceolatum* (a "lanYFP"). In nature, two lanYFP monomers form a dimer and two dimers form an "obligate" (mandatory) tetramer. When exposed to certain wavelengths of light, the lanYFP tetramer will brightly fluoresce.  However, the tetramer is large and often unsuitable as a fluorescent tag. The engineered mNeonGreen monomer is among the brightest and most stable monomeric fluorescent reporter proteins currently known. As described in the patent, the mNeonGreen proteins "have exceptional utility as a biomarker and/or protein fusion tag, and have shown great usefulness as a FRET acceptor for the newest generation of cyan fluorescent proteins."

**ANSWER:**  The allegations in the first sentence of paragraph 29 state a legal conclusion, to which no response is required.  The last sentence of paragraph 29 purports to quote the '221 patent, which speaks for itself.  BioNTech SE and BioNTech US otherwise lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 29 and therefore deny them.

30.     The resulting mNeonGreen, synthetic lanYFP fluorescent protein described and claimed in the '221 Patent is widely recognized as a breakthrough, is used throughout the industry, and has been called the "King of fluorescent proteins" by Professor Amy Palmer, at the University of Colorado Boulder. Applications involving infectious viruses, such as COVID-19 vaccine work, are high concentration environments perfectly suited for mNeonGreen, as broadly recognized.  *See,* Xie, et al*, Cell Host & Microbe 27, 841-848* (May 13, 2020) and Muruato, et al., bioRxiv preprint: https://doi.org/10.1101/2020.05.21.109546 (May 22, 2020), true and correct copies of each attached hereto as Exhibit 3 (hereafter "Cell Host Article") and Exhibit 4, respectively.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 30.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

31.     The commercial protein of mNeonGreen corresponds to SEQ ID NO:1 of the patent (claims 1, 3, 4 and 5). Allele used the nucleic acid of SEQ ID NO:2 (claim 3) to express this protein.

**ANSWER:**  BioNTech SE and BioNTech US lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 31 and therefore deny them.

32.     The '221 Patent (and the mNeonGreen technology covered by it) is not a patented invention subject to review by the FDA or any Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products. As a result, the '221 Patent is also ineligible for patent term extension under 35 U.S.C. § 156.

**ANSWER:**  Paragraph 32 states legal conclusions to which no response is required.  To the extent a response is required, BioNTech SE and BioNTech US lack knowledge and information as to what is meant by "the mNeonGreen technology" sufficient to form a belief as to the truth of the allegations in paragraph 32 and therefore deny them.

33.     In practice, mNeonGreen facilitates quick, targeted, and incredibly precise research in many different fields, including during investigation and winnowing of vaccine candidates to treat COVID-19, as well as post-authorization marketing and research for independent commercial purposes.  The fluorescent tagged therapeutic proteins associated with mNeonGreen are constructed to determine receptor expression and dynamics with therapeutic outcome for high-throughput systems, as in the present global race for a vaccine to COVID-19.  A key hurdle in developing a vaccine for infectious diseases, such as the novel coronavirus of COVID-19, is narrowing many candidates to a manageable amount by determining therapeutic outcome of potential drug candidates against COVID-19 strains, something which mNeonGreen readily solves.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANSWER:**  BioNTech SE and BioNTech US lack knowledge and information sufficient to form a belief as to the truth of the allegations in the first and second sentences of paragraph 33 and therefore deny them.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 33.

34.    Where there is a race against time, weaker fluorescent alternatives are simply no option.  mNeonGreen was the critical link in Defendants' COVID-19 vaccine development for narrowing many candidates to a manageable amount, its Phase I, II, and III trial success, authorization by the FDA, commercial use authorizations overseas thereafter, and on information and belief, obtaining marketing data as to effectiveness against other strains of the COVID-19 virus. This research tool is even more critical in a global pandemic where the need for a vaccine to save lives has never been more crucial.  While Defendants were required to obtain a commercial license from Allele, Defendants never sought a license with Allele or even contacted them.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 34.

## Accused Products

35.    In early 2020, Defendants Pfizer and BioNTech jointly agreed to develop and bring to market a COVID-19 vaccine, both within and outside the US.

**ANSWER:**  BioNTech SE and BioNTech US admit that Pfizer and BioNTech SE announced an agreement to globally co-develop a COVID-19 vaccine in March of 2020.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 35.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

36.    Defendants needed a way to safely, reliably, and rapidly evaluate a larger number of vaccine candidates and therefore used mNeonGreen in a reporter assay to narrow those candidates down to only four (4), and then to one.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 36.

37.    On or about April 29, 2020, Defendants initiated Phase I of their COVID-19 vaccine trial, in part to further evaluate and narrow COVID-19 vaccine candidates. Phase II of their COVID-19 trial initiated on June 19, 2020 to further evaluate vaccine candidates with an expanded cohort. Throughout each of Phases I and II of their COVID-19 vaccine trial, Defendants Pfizer and BioNTech analyzed patient samples using an mNeonGreen neutralization assay to evaluate COVID-19 neutralizing antibody levels. The FDA did not require that Defendants use a neutralization assay with mNeonGreen, but Defendants did so anyway.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of the first three sentences of paragraph 37.  The fourth sentence of paragraph 37 states a legal conclusion to which no response is required.  To the extent further response is required, BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 37.

38.    For example, BioNTech admitted it used mNeonGreen technology in Phases I and II of its COVID-19 vaccine trial to assess "various BNT162 mRNA vaccine candidates." *See,* SEC Form 6K dated July 1, 2020, a true and correct copy of which is attached hereto as Exhibit 5.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 38.

Case No. 20-cv-01958-H (AHG)

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

39.     At page 21 of Form 6K shown in Exhibit 5 at Page 73, BioNTech states, "[t]he SARS-CoV-2 neutralization assay used a previously described strain of SARS-CoV-2 (USA_WA1/2020) that had been rescued by reverse genetics and engineered by the **insertion of an mNeonGreen (mNG) gene** into open reading frame 7 of the viral genome." (Emphasis added.)  Stated differently, the COVID-19 vaccine of Defendants' COVID-19 vaccine trial was discovered and researched by Defendants using an mNeonGreen neutralization assay, a research tool built on a DNA construct with a monomeric mNeonGreen protein, patented by Allele, inserted into the recombinant and infectious SARS-CoV-2 virus.

**ANSWER:**  The allegations of the first sentence of paragraph 39 purport to quote Exhibit 5, which speaks for itself.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 39.

40.     mNeonGreen was not, and is not, regulated by the FDA or any government agency or federal law, particularly those involving drugs, biologics, or medical devices or implicated by 35 U.S.C. § 271(e)(1). Allele's '221 Patent covering mNeonGreen was not, and is not, eligible for patent term extension under 35 U.S.C. § 156.  The FDA also did not require that Defendants use the mNeonGreen Neutralization Assay in their vaccine work—Defendants chose to.

**ANSWER:**  The allegations of paragraph 40 state legal conclusions to which no response is required.  To the extent a response is required, BioNTech SE and BioNTech US lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 40 and therefore deny them.

41.     Further, Defendant BioNTech's Form 6K includes a copy of Mulligan et al., Phase I/II Study to Describe the Safety and Immunogenicity of a COVID-19 RNA Vaccine Candidate (BNT162b1) in Adults 18 to 55 Years of Age: Interim Report ("Mulligan"), a medRxiv preprint made available on July 1, 2020 at https://doi.org/10.1101/2020.06.30.20142570.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

**ANSWER:**  Paragraph 41 purports to characterize Exhibit 5, which speaks for itself.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 41.

42.     Mulligan contains additional information about BioNTech's work. *See* Exhibit 5 Page 62 (Exhibit 99.2, Mulligan p. 1). For example, Mulligan reported dose-dependent titers of neutralizing antibodies in human subjects with safe (mild to moderate) adverse reactions:

> The SARS-CoV-2 neutralization assay used a previously described strain of SARS-CoV-2 (USA_WA1/2020) that had been rescued by reverse genetics and engineered by the **insertion of an mNeonGreen (mNG) gene** into open reading frame 7 of the viral genome.[20] This reporter virus generates similar plaque morphologies and indistinguishable growth curves from wild-type virus. Viral master stocks used for the neutralization assay were grown in Vero E6 cells as previously described.[20]

Exhibit 5 Page 73 (at Exhibit 99.2, page 12).

**ANSWER:**  Paragraph 42 purports to quote and characterize Exhibit 5, which speaks for itself.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 42.

43.     In other words, while not required by the FDA to use mNeonGreen, BioNTech admits in Exhibit 5 that it used in Phases I and II of their COVID-19 vaccine trial the DNA construct described in the Cell Host Article, which contains and

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

is fundamentally based on the mNeonGreen research tool, to research its SARS-CoV-2 vaccine candidates.

**ANSWER:**  The allegations of paragraph 43 contain a legal conclusion to which no response is required.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 43.

44.    Defendants continued using the infringing DNA construct described in the Cell Host Article, including for example in Phase III trials and for commercial purposes such as validation, quality control, promotion, and marketing advantage.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 44.

45.    Defendants have not used mNeonGreen in order to enter the market with a product that competes with mNeonGreen. mNeonGreen is not a patented drug with a soon-to-expire patent term and Defendants did not need to establish bioequivalence of a generic substitute of mNeonGreen to enter the market with their vaccine). Defendants have not conducted appropriately limited safe harbor testing so that their vaccine could be pre-approved and ready to launch as soon as the '221 Patent expires.

**ANSWER:**  BioNTech SE and BioNTech US admit that neither BioNTech SE nor BioNTech US has entered any market with any product that competes with mNeonGreen.  BioNTech SE and BioNTech US lack knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 45 regarding "mNeonGreen is not a patented drug with a soon-to-expire patent term" or the existence of a "generic substitute of mNeonGreen" and therefore deny them.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 45.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

46.     On the contrary, Defendants have an FDA authorization for their own product, have launched, did infringe, and on information and belief continue to infringe, openly and intentionally, many years before the '221 Patent will expire, in total disregard for Plaintiff's rights and Plaintiff's crucial contribution to the success of Defendants' vaccine.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 46.

47.     Using the data premised on Defendants' use of mNeonGreen, Defendants have successfully received commercial authorizations for their COVID-19 vaccine outside the United States, and foreign sales are projected to comprise the majority of Defendants' COVID-19 vaccine sales. For example, and without limitation, Defendants received commercial authorization to enter into contracts and distribute their COVID-19 vaccine in the European Union, the United Kingdom, South Africa, Japan, Canada, Mexico, Colombia, Saudi Arabia, Turkey, South Korea, Australia, and Argentina.  With each passing day, more foreign regulators approve of Defendants' vaccine based on the data incorporating the unauthorized use of mNeonGreen—*i.e.* uses of mNeonGreen not solely and reasonably related to the development and submission of information to the FDA in the United States—but to procure lucrative vaccine contracts. Defendants have misused Plaintiff's '221 Patent and mNeonGreen without authorization to develop a patented product of their own.

**ANSWER:**  BioNTech SE and BioNTech US admit that authorizations have been provided for the distribution of the Pfizer-BioNTech COVID-19 vaccine in certain areas outside the United States.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 47.

48.     Defendants forecasted producing globally up to 50 million vaccine doses in 2020, up to 1.3 billion doses in 2021, and corresponding sales numbers approximating $26.44 billion (far higher than even their revised FTC projections), having the great benefit of the very quick and confident progress afforded through

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

their unauthorized use of mNeonGreen and resulting in Defendants' success as the first to market an effective COVID-19 vaccine.

**ANSWER:** BioNTech SE and BioNTech US deny the allegations of paragraph 48.

49. On information and belief, while not required by the FDA and instead for marketing purposes, Defendants have continued to use the mNeonGreen neutralization assay as a research tool to evaluate their commercially authorized COVID-19 vaccine against at least 20 new COVID-19 strains.

**ANSWER:** The first sentence of paragraph 49 contains a legal conclusion to which no response is required. BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 49.

50. Simultaneously, in order to prevent other market participants from manufacturing or distributing BNT162 or another vaccine built off Defendants' results, Defendants have (1) applied for patent coverage related to their COVID-19 vaccine efforts stemming from their mNeonGreen uses, and (2) forcefully opposed the World Health Organization's initiative to expand vaccine access to poor countries by granting compulsory patent rights or otherwise relaxing patent laws.

**ANSWER:** BioNTech SE and BioNTech US deny the allegations of paragraph 50.

## Defendants Used and Continue Using the MNeonGreen Neutralization Assay At All Times

51. Scientists from UTMB, who provided the mNeonGreen-SARS-CoV-2 DNA construct to Defendants, reported an "urgently needed ... fluorescent-based SARS-CoV-2 neutralization assay" with "gold standard" results. *See* Exhibit 4 Page 40). The assay of Exhibit 4 "was built on a stable mNeonGreen SARS-CoV-2" reporter virus (*Id*., at 41) (citing the Cell Host Article) and is "superior ... because it

measures functional SARS-CoV-2 neutralizing activity…. [T]he mNeonGreen
reporter assay [aka mNeonGreen neutralization assay] offers a rapid, high throughput
platform to test COVID-19 patient sera not previously available." *Id.*, at 43-44.  The
Cell Host Article also evidences that UTMB made a "reverse genetics system" for
SARS-CoV-2 by assembling seven cDNA fragments into a full-genome cDNA of the
virus. The recombinant virus has been distinguished from wild-type SARS-CoV-2.
*See* Cell Host Article at Exhibit 3 at 29, 31 (842, Fig. 2E). RNA transcribed from this
cDNA produced a highly infectious virus that, according to UTMB, "recapitulates the
replication kinetics of the original clinical isolate." *Id.*, at 29.

**ANSWER:**  Paragraph 51 purports to quote Exhibits 3 and 4, which speak for
themselves.  BioNTech SE and BioNTech US otherwise deny the allegations of
paragraph 51.

52.    mNeonGreen was incorporated into this cDNA to make a reporter virus:

> **We generated a stable mNeonGreen SARS-CoV-2**
> **(icSARS-CoV-2-mNG)** by introducing this reporter gene
> into ORF7 of the viral genome. icSARS-CoV-2-mNG was
> successfully used to evaluate the antiviral activities of
> interferon (IFN). Collectively, the reverse genetic system
> and reporter virus provide key reagents to study SARSCoV-
> 2 and develop countermeasures.

Cell Host Article at Exhibit 3 at 28 (841 (Summary)), Exhibit 3 at 30, 32 (843, Fig.
3A).

**ANSWER:**  The allegations of paragraph 52 purport to quote and characterize
Exhibit 3, which speaks for itself.  BioNTech SE and BioNTech US otherwise deny
the allegations of paragraph 52.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

53.     While the Cell Host Article describes an mNeonGreen neutralization assay, for SARS-CoV-2, it emphasizes the robustness of using mNeonGreen as a gold standard tool for rapid characterization and development of "countermeasures" for a variety of emerging infections.  As a representative example of such emerging viruses, the authors of the Cell Host Article developed a SARS-CoV-2 reporter tool, the aforementioned mNeonGreen neutralization assay, with the "**mNeonGreen virus [] be[ing] reliably used** to study viral replication and pathogenesis as well as to develop vaccines and antiviral drugs." *Id*. at 29, 30. The authors further describe the mNeonGreen reporter virus as "a reliable surrogate for high-throughput drug discovery" that "represents a major tool for the research community and significantly advances opportunities for countermeasure development for COVID-19." *Id*. at 34.

**ANSWER:**  Paragraph 53 purports to quote and characterize Exhibit 3, which

speaks for itself.  BioNTech SE and BioNTech US otherwise deny the allegations of

paragraph 53.

54.     The Key Resources Table of the Cell Host Article lists "**synthesized mNeonGreen gene (sequence optimized)**" and refers to a publication from 2013 by the Inventors which corresponds to the '221 Patent. See, Cell Host Article at e1, e2.

**ANSWER**:  Paragraph 54 purports to characterize Exhibit 3, which speaks for

itself.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph

54.

55.     mNeonGreen in UTMB's construct is identical to SEQ ID NO:1 of the '221 patent.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph

55.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

56.    Mulligan of Exhibit 5 also states, "BioNTech is the Sponsor of the study" and that "Pfizer was responsible for the design, data collection, data analysis, data interpretation, and writing of the report," confirming Defendants' intimate involvement in every aspect of the study. *See* Exhibits 6, 7, and 8 with true and correct copies of each attached hereto which confirm mNeonGreen's continued use by Defendants in their development of a COVID-19 vaccine. Defendants directly used the invention patented in the '221 Patent, and for which Defendants have since obtained hefty government grants and sales. Exhibit 5 Page 66 (at Exhibit 99.2 p. 5).

**ANSWER:**  The allegations of the first sentence of paragraph 56 purport to quote and characterize Exhibit 5, which speaks for itself.  The second sentence of paragraph 56 purports to characterize exhibits 6, 7, and 8, which speak for themselves. BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 56.

57.    While not required by the FDA, Defendants, on information and belief, continue using the mNeonGreen neutralization assay or variant thereof, which includes mNeonGreen, to research SARS-CoV-2-neutralizing antibody levels against at least 20 new COVID-19 strains. The purpose of this infringing use is to compete in the marketplace against other COVID-19 vaccines, by highlighting to potential purchasers and users of the vaccine added benefits of using Defendant's BNT162 vaccine instead of other vaccines. These uses are referred to herein as "Post-Approval Marketing Use."

**ANSWER:**  The first sentence of paragraph 57 contains a legal conclusion to which no response is required.  BioNTech SE and BioNTech US otherwise deny the allegations of paragraph 57.

58.    A protein made using the DNA construct used by Defendants has "at least one" of the mutations in claim 1, at least three of the mutations in claim 4, at least 95% sequence identity according to claims 1, 2, and 4; has at least 97% sequence identity according to claim 5, and has a monomer according to claim 2.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 58.

59.     Therefore, the mNeonGreen protein used by Defendants, including in mNeonGreen neutralization assays, literally infringes at least claims 1, 2, 4 and 5 of the '221 Patent.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 59.

60.     At no time has Allele granted Defendants authorization, license, or permission to practice the inventions claimed in the '221 Patent.

**ANSWER:**  BioNTech SE and BioNTech US deny that either has practiced or is practicing the alleged inventions claimed in the '221 patent, and otherwise deny the allegations of paragraph 60.

61.     Because of this continued infringement, Defendants were able to identify their COVID-19 vaccine candidate, BNT162, as the most promising candidate to commercialize and be the first COVID-19 vaccine authorized for commercial use in the United States and worldwide.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 61.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

**Defendants' Willful Infringement**

62.     The '221 Patent was issued by the United States Patent and Trademark Office.  As an issued patent, the '221 Patent has a presumption of validity per 35 U.S.C. § 282.

**ANSWER:**  The allegations of paragraph 62 set forth legal conclusions to which no response is required.  To the extent a response is required, BioNTech SE and BioNTech US admit that the '221 patent on its face recites an issuance date. BioNTech SE and BioNTech US deny that the '221 patent is valid, and otherwise deny the allegations of paragraph 62.

63.     At least claims 1, 2, 4 and 5 of the '221 Patent have all of their limitations met by the Accused Product, which thus infringes the '221 Patent.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 63.

64.     Since at least as early as May 2020, Defendants have been aware of the '221 Patent, and have had actual knowledge of the '221 Patent and the obvious risk of infringement by continued use of mNeonGreen throughout their development of their COVID-19 vaccine candidate in the United States.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 64.

65.     Despite their knowledge of the obvious risk of infringement of the '221 Patent, Defendants since at least as early as May of 2020 continued using Allele's mNeonGreen throughout their COVID-19 vaccine trials and, on information and

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

belief, after their post-FDA authorization of commercial use of their COVID-19 vaccine.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 65.

66.     Defendants' continued infringement was and is subjectively reckless and intentional. Defendants have infringed the '221 Patent in a willful and egregious manner, in wanton disregard of the '221 Patent.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 66.

## FIRST CLAIM FOR RELIEF

(Infringement of the '221 Patent Against All Defendants)

67.     Allele realleges and incorporates by reference all paragraphs in this Complaint above as if fully set forth herein.

**ANSWER:**  BioNTech SE and BioNTech US reallege and incorporate by reference all paragraphs in its Answer above as if fully set forth herein.

68.     This is a claim for patent infringement and arises under the Patent Laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

**ANSWER:**  The allegations of paragraph 68 purport to characterize Allele's First Amended Complaint, which speaks for itself, and set forth legal conclusions to which no response is required.  To the extent a response is required, BioNTech SE and BioNTech US deny that either has infringed the '221 patent and further deny that

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

Allele is entitled to any of the relief that it seeks.  BioNTech SE and BioNTech US

otherwise deny that Allele states a claim for patent infringement arising under the

Patent Laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

69.     Defendants have in the past infringed and continue to infringe the '221 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in the United States, or importing into the United States, mNeonGreen with its SARS-CoV-2 neutralization assay and DNA construct that infringes at least claims 1, 2, 4, and 5, of the '221 Patent.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 69.

70.     Allele is informed and believes that Defendants have infringed, and continue to infringe, the '221 patent by making, using, selling, offering for sale and/or licensing products covered by at least claims 1, 2, 4, and 5 of the '221 Patent without Allele's authorization or consent.

**ANSWER:**  BioNTech SE and BioNTech US lack knowledge and information sufficient to form a belief as to what Allele believes, and therefore BioNTech SE and BioNTech US deny the allegations of paragraph 70.

71.     Defendants have in the past infringed and continue to infringe the '221 Patent in violation of 35 U.S.C. § 271(f) because Defendants supply or cause to be supplied from the United States all or a substantial portion of the patented invention for combination outside the United States, including use of mNeonGreen with its SARS-CoV-2 neutralization assay and DNA construct throughout their COVID-19 vaccine trial in the United States and outside the United States, in a manner that would infringe at least claims 1, 2, 4, and 5 of the '221 Patent, if such combination occurred within the United States.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 71.

72.     Section 287 of Chapter 35 of the U.S.C. has been satisfied.

**ANSWER:**  Paragraph 72 sets forth a legal conclusion to which no response is required.  To the extent a response is required, BioNTech SE and BioNTech US deny that Allele has established that Section 287 of Chapter 35 of the U.S.C. was satisfied.

73.     Defendants' infringing conduct will continue unless enjoined by this Court.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 73.

74.     Defendants' acts of direct infringement have been, and continue to be, willful and deliberate and Defendants' acts of indirect infringement were, and continue to be, knowing and intentional.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 74.

75.     Allele is entitled to an award of damages adequate to compensate Allele for patent infringement, as well as prejudgment interest from the date the infringement began, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 75.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

76.     Allele is entitled to an award of treble damages for the period of any willful infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 76.

77.     Allele is entitled to a finding that this case is exceptional and an award of interest, costs and attorneys' fees incurred by Allele in prosecuting this action as provided by 35 U.S.C. § 285.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 77.

78.     Allele is entitled to an award of pre-judgment and post-judgment interest as provided by law.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 78.

79.     Allele is entitled to such other and further relief as this Court or a jury may deem just and proper.

**ANSWER:**  BioNTech SE and BioNTech US deny the allegations of paragraph 79, and deny that Allele is entitled to any relief whatsoever.

### ALLELE'S PRAYER FOR RELIEF

The "WHEREFORE" paragraphs following paragraph 79 state Allele's Prayer for Relief, to which no response is required.  To the extent a response is required,

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

1  BioNTech SE and BioNTech US deny that Allele is entitled to any of the relief in the

2  Prayer for Relief, or any relief whatsoever.

4                          *        *        *

6         Any allegation in the First Amended Complaint not expressly admitted herein is

7  hereby denied.  All allegations in the section headers of Allele's First Amended

8  Complaint are hereby denied.

## **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**
### **(Invalidity of the '221 Patent)**

14        80.    The claims of the '221 patent are invalid under one or more grounds set

15  forth in Title 35 of the United States Code, including without limitation, (a) as

16  anticipated pursuant to section 102 of Title 35 of the United States Code; (b) as

18  obvious pursuant to section 103 of Title 35 of the United States Code; (c) as

19  indefinite, not enabled, and not described pursuant to section 112 of Title 35 of the

20  United States Code; and (d) as directed to patent ineligible subject matter under

22  section 101 of Title 35 of the United States Code.

### **SECOND AFFIRMATIVE DEFENSE**
### **(Non-infringement of the '221 patent)**

26        81.    The manufacture, use, offer to sell, sale, and/or importation of the Pfizer-

27  BioNTech COVID-19 vaccine does not infringe any valid claim of the '221 patent.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

1   82.   The alleged use of a neutralization assay did not infringe any valid claim

2   of the '221 patent.

3

4   83.   Allele fails to state a claim for patent infringement arising under the

5   Patent Laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

6

7   **THIRD AFFIRMATIVE DEFENSE**
8   **(Prosecution History Estoppel)**

9   84.   The claims against BioNTech SE and BioNTech US are barred, in whole

10  or in part, by prosecution history estoppel.

11

12  **FOURTH AFFIRMATIVE DEFENSE**
13  **(Failure to Mark)**

14  85.   Allele's claims for damages prior to the commencement of this action for

15  alleged infringement of the '221 patent are barred by 35 U.S.C. § 287.

16

17  **FIFTH AFFIRMATIVE DEFENSE**
18  **(Patent Misuse)**

19  86.   Allele's claims for infringement against BioNTech SE and BioNTech US

20  are barred in whole or in part by the doctrine of patent misuse.

21

22  **SIXTH AFFIRMATIVE DEFENSE**
23  **(35 U.S.C. § 271(e)(1))**

24  87.   Allele's claims for infringement against BioNTech SE and BioNTech US

25  are barred by the safe harbor of 35 U.S.C. § 271(e)(1).

26

27

28

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

## SEVENTH AFFIRMATIVE DEFENSE
### (Equitable Estoppel)

88.     Allele's claims for infringement against BioNTech SE and BioNTech US are barred by the doctrine of equitable estoppel.

## EIGHTH AFFIRMATIVE DEFENSE
### (Implied License)

89.     Allele's claims for infringement against BioNTech SE and BioNTech US are barred by the doctrine of implied license.

## NINTH AFFIRMATIVE DEFENSE
### (Patent Exhaustion)

90.     Allele's claims for infringement against BioNTech SE and BioNTech US are barred by the doctrine of patent exhaustion.

## TENTH AFFIRMATIVE DEFENSE
### (Acquiescence)

91.     Allele's claims for infringement against BioNTech SE and BioNTech US are barred by the doctrine of acquiescence.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

92.     Allele's claims for infringement against BioNTech SE and BioNTech US are barred by the doctrine of unclean hands.

**WHEREFORE,** BioNTech SE and BioNTech US respectfully request the following relief:

35         Case No. 20-cv-01958-H (AHG)

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

1

2

    (a)  An order dismissing each of Allele's claims with prejudice;

3

    (b) A judgment that neither BioNTech SE nor BioNTech US has infringed the

4

        '221 patent.

5

6

    (c) A judgment that the '221 patent is invalid.

7

8

    (d) A declaration that this is an exceptional case and an award of attorneys' fees
        pursuant to 35 U.S.C. § 285;

9

10

    (e) An award of BioNTech SE's and BioNTech US's costs and expenses in this
        action; and

11

12

    (f) Such further and other relief as this Court may deem just and proper.

13

14

## COUNTERCLAIMS

15

Without admitting any of the allegations of Plaintiff Allele Biotechnology and

16

Pharmaceuticals, Inc. ("Allele's") other than those expressly admitted herein, and

17

18

without prejudice to Counterclaim-Plaintiffs' BioNTech SE's ("BioNTech SE") and

19

BioNTech US, Inc.'s ("BioNTech US") right to plead additional counterclaims as the

20

facts of the matter warrant, BioNTech SE and BioNTech US assert the following

21

22

counterclaims against Counterclaim-Defendant Allele.

23

### Parties

24

25

    1.       Counterclaim-Plaintiff BioNTech SE, is a company organized and

26

existing under the laws of Germany with its principal place of business located in An

27

der Goldgrube 12 Mainz, 55131 Germany.  Counterclaim-Plaintiff BioNTech US, Inc.

28

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

is a company organized and existing under the laws of the State of Delaware with its principal place of business located in Cambridge, Massachusetts.

2.    Upon information and belief, and based on Counterclaim-Defendant's allegations, Counterclaim-Defendant Allele is a California corporation with its principal place of business being, 6404 Nancy Ridge Drive, San Diego, California 92121.

**Background, Jurisdiction and Venue**

3.    BioNTech SE and BioNTech US seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  The court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.    Venue is proper under 28 U.S.C. §§ 1391 and 1400(b), and by Counterclaim-Defendant's choice of forum.

5.    This action is based upon an actual controversy between the parties arising from allegations of infringement of the '221 patent.

6.    Pfizer and BioNTech SE announced an agreement to globally co-develop a COVID-19 vaccine in March of 2020.  The vaccine is an mRNA-based vaccine, and received an Emergency Use Authorization from the FDA on December 11, 2020.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

7.      On October 5, 2020, Allele sued Pfizer and Counterclaim-Plaintiffs BioNTech SE and BioNTech US for infringement of the '221 patent, alleging that Pfizer, BioNTech SE, and BioNTech US had used the invention of the '221 patent in an infringing manner in various alleged preclinical, clinical, and post-marketing capacities.

8.      Prior to October 5, 2020, Allele did not provide BioNTech SE or BioNTech US with any notice of alleged infringement of the '221 patent.

9.      Prior to October 5, 2020, Allele was aware of the conduct of UTMB that is alleged in Allele's Amended Complaint.  Allele never sued UTMB for patent infringement or sought a license from that entity.

10.      Allele has never developed a COVID-19 vaccine and has never partnered with any company to successfully develop a COVID-19 vaccine.

11.      mNeonGreen is not a COVID-19 vaccine.  mNeonGreen is not included in any COVID-19 vaccine.

12.      Allele's website, as of October 5, 2020, offered the mNeonGreen Advanced User License, by which an academic laboratory could "use mNeonGreen" and receive "a basic E. Coli expression plasmid" and "access to any mNeonGreen fusions and constructs carried by Allele Biotechnology."  The price of the license for mNeonGreen was six hundred dollars ($600.00).

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT

13.    BioNTech SE and BioNTech US have denied that they have infringed, continue to infringe, or will infringe any valid and enforceable claim of the '221 patent.

14.    In view of the foregoing, a conflict of asserted rights has arisen between BioNTech SE and Counterclaim-Defendant and between BioNTech US and Counterclaim-Defendant with respect to the noninfringement and invalidity of the relevant claims of the '221 patent.

15.    BioNTech SE and BioNTech US have further asserted that the '221 patent is invalid for failure to satisfy one or more of the provisions of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or the doctrine of obviousness type double patenting and/or any other judicially created requirements for patentability and enforceability of patent, and the defenses recognized in 35 U.S.C. § 282.

## COUNT I – DECLARATION OF NONINFRINGEMENT

16.    BioNTech SE and BioNTech US reallege and incorporate by reference paragraphs 1 through 15 of their Counterclaims as if fully set forth herein.

17.    This Counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. 28 §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy having adverse legal

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

interest of sufficient immediacy and reality to warrant the issuance of a declaration of rights by the Court exists between BioNTech SE and Counterclaim Defendant Allele and between BioNTech US and Counterclaim Defendant Allele concerning infringement of the '221 patent.

18.     Counterclaim Defendant has accused BioNTech SE and BioNTech US of activities that it claims infringe the '221 patent ("Accused Activities").

19.     BioNTech SE and BioNTech US deny that they have infringed any valid and enforceable claim of the '221 patent, including for at least the reason that neither of them has made, used, offered to sell, sold, or imported any "non-naturally occurring isolated monomeric or dimeric lanYFP fluorescent protein" that meets the limitations of the asserted claims of the '221 patent.

20.     BioNTech SE and BioNTech US are entitled to a judicial determination that they have not infringed and will not infringe any valid claim of the '221 patent, including by performance of the alleged Accused Activities.

## <u>COUNT II – DECLARATION OF INVALIDITY</u>

21.     BioNTech SE and BioNTech SE reallege and incorporate by reference paragraphs 1 through 20 of their Counterclaims as if fully set forth herein.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

22.    Claims 1-2 and 4-5 of the '221 patent are invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 et seq., including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103, 112, and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

## **DEMAND FOR JUDGMENT**

WHEREFORE, BioNTech SE and BioNTech US pray for the following relief:

A. That the Court order the Complaint dismissed with prejudice and judgment be entered in favor of BioNTech SE and BioNTech US;

B. That a judgment be entered declaring that neither BioNTech SE's nor BioNTech US's conduct has infringed the '221 patent;

C. That a judgment be entered declaring claims 1-2 and 4-5 of the '221 patent invalid;

D. That Allele and its agents, representatives, attorneys, and those persons in active concert or participation with them who receive actual notice thereof, be preliminarily and permanently enjoined from threatening or initiating infringement litigation against BioNTech SE, BioNTech US, or any of their customers, dealers, or suppliers, or any prospective or present sellers, dealers, distributors, or customers of BioNTech SE or BioNTech US, or charging any of them either orally or in writing with infringement of the '221 patent.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

E. That a judgment be entered, declaring that this action is an exceptional case within the meaning of 35 U.S.C. § 285 and that BioNTech SE and BioNTech US are therefore entitled to recover their reasonable attorneys' fees upon prevailing in this action;

G. That BioNTech SE and BioNTech US be awarded costs, attorney's fees, and other relief, both legal and equitable, to which it may be justly entitled; and

H. That BioNTech SE and BioNTech US be awarded such other and further relief as is just and proper.

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST AMENDED COMPLAINT

1    DATED:  June 3, 2021                      Respectfully submitted,

2

3                                              By: _/s/ Elizabeth L. Brann_
                                                   ELIZABETH L. BRANN
4

5                                              **PAUL HASTINGS LLP**
                                               Elizabeth L. Brann (SBN 222873)
6                                              elizabethbrann@paulhastings.com
                                               4747 Executive Drive, 12th Floor
7                                              San Diego, CA 92121
                                               Telephone:  858-458-3000
8                                              Facsimile :  858-458-3005

9

10                                             Bruce M. Wexler*
                                               brucewexler@paulhastings.com
11                                             Merri C. Moken*
                                               merrimoken@paulhastings.com
12                                             200 Park Avenue
                                               New York, NY 10166
13                                             Telephone:  212-318-6000
                                               Facsimile:  212-319-4090
14                                             * Admitted pro hac vice
15
16                                             *Attorneys for Defendants BioNTech SE*
17                                             *and BioNTech US, Inc.*

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS BIONTECH SE AND BIONTECH US'S ANSWER TO FIRST
AMENDED COMPLAINT