**NOONAN LANCE BOYER & BANACH**
David J. Noonan (SBN 55966)
701 Island Avenue, Suite 400
San Diego, CA 92101
Telephone: 619-780-0880
Facsimile: 619-780-0877

**WILLIAMS & CONNOLLY LLP**
Thomas H. L. Selby*
Stanley E. Fisher*
Charles L. McCloud*
Michael Xun Liu*
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202-434-5000
Facsimile: 202-434-5029
* Admitted pro hac vice

*Attorneys for Defendant Pfizer Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Allele Biotechnology and Pharmaceuticals, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Pfizer Inc.; BioNTech SE; BioNTech US, Inc.; and DOES 1-30 <br><br> Defendants. | Case No. 20-cv-01958-H (AHG) <br><br> **DEFENDANT PFIZER, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT OF PLAINTIFF ALLELE BIOTECHNOLOGY AND PHARMACEUTICALS, INC.** |

Defendant Pfizer, Inc. ("Pfizer"), by its undersigned attorneys, hereby answers the First Amended Complaint of Allele Biotechnology and Pharmaceuticals, Inc., ("Allele"), as follows.  Any allegations not expressly admitted are hereby denied, including allegations directed to Defendants BioNTech SE and BioNTech US, Inc. (collectively, "BioNTech") which are the subject of a responsive pleading filed by BioNTech.  This answer follows the numbering provided in Allele's First Amended Complaint.  To the extent the section headings of Allele's First Amended Complaint contain allegations, those allegations are hereby denied.

1.     This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, based on Defendants' infringement of United States Patent No. 10,221,221 ("the '221 Patent").

**ANSWER:**  The allegations in paragraph 1 purport to characterize Allele's First Amended Complaint, which speaks for itself, and set forth legal conclusions to which no response is required.  To the extent a response is required, denied that Pfizer infringes the '221 patent and denied that Allele is entitled to any of the relief that it seeks.

## INTRODUCTION

2.     Prior to the current COVID-19 crisis, Allele had already developed the revolutionary mNeonGreen.  mNeonGreen belongs to Allele, as does the '221 Patent covering the exclusive right to use mNeonGreen. mNeonGreen is an artificial fluorescent that Allele painstakingly developed over many years through the genius of its inventors. It is the world's brightest monomeric fluorescent protein, dubbed by third-party industry veterans as the "King of fluorescent proteins." A prominent university used mNeonGreen to make the "gold standard" COVID-19 assay for effectively testing against vaccine candidates, which Pfizer and BioNTech readily took for their own unauthorized commercial testing and development.

**ANSWER:**  Pfizer denies that mNeonGreen was "revolutionary," and lacks knowledge and information sufficient to form a belief as to the truth of the remaining

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

allegations in the first four sentences of paragraph 2 and therefore denies them.  Pfizer otherwise denies the allegations of paragraph 2.

3.     Defendants have made, and upon information and belief are continuing to make, pre-clinical, clinical, and post-clinical use of mNeonGreen in a neutralization assay, to (a) rapidly winnow an unmanageable number of vaccine candidates down to four (4) vaccine candidates; (b) select their BNT162 RNA based COVID-19 vaccine candidate; (c) conduct Phase I-III clinical trials; (d) secure rapid FDA authorization for distribution of a commercial vaccine; (e) validate the commercial vaccine; and (f) further test the commercial vaccine, for example, against new COVID-19 strains.

**ANSWER:**  Pfizer denies the allegations of Paragraph 3.

4.     Pfizer and BioNTech's approach to a COVID-19 vaccine relied on an unproven, gene-based biotechnology using messenger ribonucleic acid (mRNA).

**ANSWER:** Pfizer admits that the Pfizer-BioNTech COVID-19 vaccine uses mRNA.  Pfizer lacks an understanding of what Allele means by use of the phrase "gene-based biotechnology" and therefore denies the allegation.  Pfizer otherwise denies the allegations of paragraph 4.

5.     BioNTech had been trying for over a decade to create such an mRNA based therapeutic, but had not launched a single commercial product in that timeframe. Similarly, BioNTech and Pfizer had previously attempted to develop an mRNA flu vaccine without success.  On information and belief, Defendants did not use mNeonGreen in those prior unsuccessful efforts.

**ANSWER:**  Pfizer lacks an understanding of what Allele means by use of the phrase "such an mRNA based therapeutic" and "in those prior unsuccessful efforts" and denies the allegations of paragraph 5.

6.     Only through use of mNeonGreen were Defendants able to research, develop, and test their SARS-CoV-2 vaccine candidates at lightspeed, and be first to market.  Allele's mNeonGreen has been an instrumental driver in selecting the most potent vaccine candidate, which has saved precious time and lives as a result.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

Defendants took advantage of the benefits brought by mNeonGreen to facilitate a rapid proof of concept during the discovery, research and further development of products, entry into clinical trials, regulatory approval, and sales.

**ANSWER:**  Pfizer denies the allegations of paragraph 6.

7.      Being first to market earned Defendants an immediate $445 million in grants.  As distribution began, Pfizer raised its 2021 projections to $60 billion total revenue, $15 billion of which is from the resulting COVID-19 vaccine (leading to as much as $4.35 billion in profit off the vaccine).  The benefits of this vaccine throughout the world, particularly when time is of the essence, stem from Defendants' misappropriation of Allele's breakthrough (and patented) mNeonGreen technology as stated by their own collaborators: "The icSARS-CoV-2-mNG reporter virus allows the use of fluorescence as a surrogate readout for viral replication.  Compared with a standard plaque assay or median tissue culture infectious dose (TCID50) quantification, the fluorescent readout shortens the assay turnaround time by several days.  In addition, the fluorescent readout offers a quantitative measure that is less labor-intensive than the traditional means of viral titer reduction.  Furthermore, the mNG-virus-based assay could be automated in a high-throughput format to screen compounds against viral replication."

**ANSWER:**  Pfizer denies the allegations of paragraph 7.

8.      The authors, in the same publication, go on to state that "the stability of the mNG reporter virus allows it to be used for longer-term studies and *in vivo* without fear of losing its fluorescent marker. Thus, this reporter virus offers a huge advantage for the research community and pharmaceutical companies to develop therapeutics for COVID-19." In other words, mNeonGreen is the best tool for the application, including because of savings in labor and time, as well as sensitivity and longevity of the signal to be measured over time. Thus, the Defendants' use of mNeonGreen made possible the rapid identification and development of the leading vaccine against

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

1    COVID-19, providing a significant advantage in the market and stemming the
2    devastating worldwide effects of the virus.

3    **ANSWER:**  The allegations of the first two sentences of paragraph 8 purport to
4    quote a document, which speaks for itself.  Pfizer otherwise denies the allegations of
5    paragraph 8.

6    9.    Allele's mNeonGreen is a pioneering breakthrough in fluorescent protein
7    technology, the latest in its history of innovation. mNeonGreen is a broad and flexible
8    discovery-inducing innovation in biotechnology and medicine, allowing scientists and
9    researchers to see biological subjects quickly, clearly, and with a new level of
10   certainty—something of increased importance for therapeutics targeting COVID-19.
11   mNeonGreen's versatility provides a wide array of uses, for example, high throughput
12   studies in the tracking of proteins in a cell to research cell development in growing
13   worms, a use with no relationship to veterinary or medical advancements.

14   **ANSWER:**  Pfizer denies the allegations in the first and second sentences of
15   paragraph 9.  Pfizer lacks knowledge and information sufficient to form a belief as to
16   the truth of the allegations in the third sentence of paragraph 9 and therefore denies
17   them.

18   10.   Since 1999, Allele has been a leader in developing technology and
19   research tools for such clinical and therapeutic uses. Among other achievements,
20   Allele's advancements have been directed to RNA interference, Fluorescent Proteins,
21   Induced Pluripotent Stem Cells (iPSCs), Genome Editing, and camelid derived Single
22   Domain Antibodies, including those recently developed against SARS-CoV-2 and its
23   UK and South African variants.

24   **ANSWER:**  Pfizer lacks knowledge and information sufficient to form a belief
25   as to the truth of the allegations in paragraph 10 and therefore denies them.

26   11.   More recently since January of 2020, Allele has been actively engaged in
27   combating COVID-19, initiating impactful diagnostic and therapeutic platforms
28   premised on speed, accuracy, and sensitivity. mNeonGreen is a broad and flexible

5    Case No. 20-cv-01958-H (AHG)

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

discovery-inducing innovation in biotechnology and medicine, allowing scientists and researchers to see what could not clearly and quickly be seen before—something of increased importance for therapeutics targeting COVID-19.

**ANSWER:**  Pfizer lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 11 and therefore denies them.  Pfizer otherwise denies the allegations of paragraph 11.

12.   Pfizer and BioNTech's infringing uses are varied and widespread, and include, by way of example and without limit: (1) Screening at the research and development stage to test the potency, screening for candidates, and narrowing to lead candidates, (2) Preclinical Investigatory Uses to bring the lead candidates toward clinical evaluation, (3) Clinical Trial Uses, and, on information and belief, (3) Post-Approval Marketing Uses. Plaintiff Allele brings this lawsuit because Defendants did not so much as pick up the phone and seek to obtain the rights to use Allele's valuable intellectual property. Instead, Defendants made the deliberate and calculated decision to infringe the '221 patent-in-suit, in order to gain a successful "full speed ahead" advantage, which brought them first to market both domestically and internationally.

**ANSWER:** Pfizer denies the allegations of paragraph 12.

## JURISDICTION AND VENUE

13.   This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271.

**ANSWER:** The allegations of paragraph 13 purport to characterize Allele's First Amended Complaint, which speaks for itself, and state legal conclusions, to which no response is required.  To the extent a response is required, Pfizer denies that it has infringed the '221 patent and further denies that Allele is entitled to any of the relief that it seeks.  Pfizer further denies that Allele states a claim for patent infringement arising under the Patent Laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1338(a).

**ANSWER:**  The allegations of paragraph 14 state legal conclusions to which no response is required.  To the extent a response is required, Pfizer does not contest subject matter jurisdiction for purposes of this action.

15.     This Court has personal jurisdiction over Defendants because Defendants regularly conduct business within, and specifically direct their business activities to, the State of California and the Southern District of California ("this District"). Defendants have purposefully availed themselves of the opportunity to conduct business in this state through systematic and continuous dealings in this state. Defendants' actions that give rise to personal jurisdiction include, but are not limited to the following: making and using infringing products in this State and in this District, knowing and intending that the infringing products would be used in this District, deriving substantial revenue from the use of infringing products within this District, and expecting their infringing actions to have consequences in this District.

**ANSWER:**  The allegations of paragraph 15 state legal conclusions to which no response is required.  Pfizer denies that it has made or used infringing products in this State and in this District, that it knows or intends that any infringing products would be used in this District, that it derives substantial revenue from the use of infringing products within this District; and that it expects infringing actions to have consequences in this District.  Pfizer further denies that it makes or uses infringing products in this State or in this District.

16.     Venue is proper as to BioNTech SE in this judicial district pursuant to, *inter alia*, 28 U.S.C. § 1391(c)(3).

**ANSWER:**  The allegations of paragraph 16 state a legal conclusion to which no response is required.  To the extent a response is required, Pfizer lacks knowledge and information sufficient to form a belief as to the allegations of paragraph 16 and therefore denies them.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

17.     Venue also is proper as to Defendants under 28 U.S.C. § 1400(b). Each Defendant has committed, induced others to commit, or contributed to others committing, acts of infringement in this District, including by conducting Phase I, II, and III clinical trials of the vaccine within the United States and overseas, utilizing mNeonGreen with over 40,000 participants and study sites including in San Diego County, under Clinical Study Identifier NCT04368728. Pfizer has a regular and established place of business in La Jolla, California which, on information and belief, is a 25-acre campus with over half a million square feet of buildings and "one of the largest concentrations of academic and biotechnology institutions in the world." BioNTech has a regular and established place of business at 11535 Sorrento Valley Rd #400, San Diego, CA, namely its 15,000 square foot US laboratory, research and development facility, which it identified as of January 2020 as its U.S. research and development hub.

**ANSWER:**  The allegations in the first sentence of paragraph 17 state a legal conclusion to which no response is required.  To the extent a response is required, Pfizer denies the allegations in the first sentence of paragraph 17.  Pfizer denies the allegations in the second sentence of paragraph 17, and denies that it has committed any acts of infringement.  The allegations in the third sentence of paragraph 17 state a legal conclusion to which no response is required.  To the extent a response is required, Pfizer admits that it has a 25-acre campus in La Jolla, California with over half a million square feet of buildings and that the San Diego area has "one of the largest concentrations of academic and biotechnology institutions in the world." Pfizer lacks knowledge and information sufficient to form a belief regarding any regular and established place of business of BioNTech and therefore denies the allegations.  Pfizer otherwise denies the allegations of paragraph 17.

## **THE PARTIES**

18.     Allele is a California corporation with its principal place of business being, 6404 Nancy Ridge Drive, San Diego, California 92121.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

**ANSWER:** Pfizer lacks knowledge and information sufficient to form a belief regarding the allegations of paragraph 18 and therefore denies them.

19.     Allele was founded in 1999 and is recognized as a leading developer of technologies for clinical and therapeutic use. These include research tools for inducing discoveries in a variety of spaces in the life-sciences, including but not limited to investigation, winnowing, and validation of drug and vaccine candidates, as in the ever-changing race to prevent, treat, and cure COVID-19.

**ANSWER:**  Pfizer lacks knowledge and information sufficient to form a belief as to the truth of the allegations of when Allele was founded or what unnamed persons "recognized" and therefore denies the same.  Pfizer otherwise denies the allegations of paragraph 19.

20.     Defendant Pfizer is a company organized and existing under the laws of the State of Delaware with its principal place of business at 235 East 42nd Street, New York, NY 10017.

**ANSWER:**  Pfizer admits the allegations of paragraph 20.

21.     Defendant BioNTech SE, is a company organized and existing under the laws of Germany, traded in the United States on the NASDAQ, with its principal place of business located in An der Goldgrube 12 Mainz, 55131 Germany. Defendant BioNTech US, Inc. is a company organized and existing under the laws of the State of Delaware with, on information and belief, its principal place of business located in Cambridge, Massachusetts.

**ANSWER:**  Pfizer lacks knowledge and information sufficient to form a belief regarding the allegations of paragraph 21 and therefore denies them.

22.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 30, inclusive, are unknown to Allele, who therefore sues said defendants by such fictitious names. Allele will amend this Complaint to state their true names and capacities when the same is ascertained. Allele is informed and believes that at all times herein mentioned, each defendant

1    named herein was the agent of each of the remaining defendants and, in doing the

2    things herein alleged, was acting within the course and scope of said agency. Any

3    reference in this Complaint to the actions or inactions of any defendant, whether such

4    reference is made to such defendant by specific name or otherwise, is also a reference

5    to the actions or inactions of DOES 1 through 30, inclusive.

6        **ANSWER:**  Pfizer denies that any of DOES 1 through 30 are properly named

7    as defendants, and otherwise lacks knowledge and information sufficient to form a

8    belief regarding the allegations of paragraph 22 and therefore denies them.

9        23.    Defendant Pfizer since early 2020 has been, among other things, engaged

10    with BioNTech in the development of their BNT162 MRNA-based vaccine, which

11    was first narrowed from a larger number of candidates using a research tool that is

12    based fundamentally on Allele's mNeonGreen. Through continued unauthorized use

13    of mNeonGreen, Defendants' vaccine candidate was further evaluated, and eventually

14    authorized for use by the FDA on December 11, 2020 after, on information and belief,

15    clinical trials involving at least about 40,000 participants.

16        **ANSWER:**  Pfizer admits that in March 2020 a collaboration with BioNTech

17    was announced to develop a COVID-19 vaccine.  Pfizer further admits that the Pfizer-

18    BioNTech COVID-19 vaccine is an mRNA-based vaccine, and received an

19    Emergency Use Authorization from the FDA on December 11, 2020.  Pfizer otherwise

20    denies the allegations of paragraph 23.

21        24.    At all times mentioned herein, Defendants, and each of them, were the

22    agents, servants, co-conspirators, or employees of one another, and the acts and

23    omissions herein alleged were done or suffered by them, acting individually and

24    through or by their alleged capacity, within the scope of their authority. Each of the

25    defendants aided and abetted and rendered substantial assistance in the

26    accomplishment of the acts complained of herein. In taking the actions, as

27    particularized herein, to aid and abet and substantially assist in the commission of the

28    misconduct complained of, each defendant acted with an awareness of his, her or its

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

primary wrongdoing and realized that his, her or its conduct would substantially assist in the accomplishment of that misconduct and was aware of his, her or its overall contribution to, and furtherance of the conspiracy, common enterprise, and common course of conduct. Defendants' acts of aiding and abetting included, inter alia, all of the acts each defendant is alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of herein.

**ANSWER:**  The allegations of paragraph 24 state legal conclusions to which no response is required.  To the extent a response is required, Pfizer denies the allegations of paragraph 24.

## FACTS

### Background

25.    Messrs. Nathan C. Shaner, Gerard G. Lambert, Yuhui Ni, and Jiwu Wang are joint inventors (collectively "Inventors") of the '221 Patent, entitled "Monomeric yellow-green fluorescent protein from cephalochordate" and which issued on March 5, 2019. A true and correct copy of the '221 Patent is attached hereto as Exhibit 1.

**ANSWER:**  Pfizer admits that the face of the '221 patent lists Nathan C. Shaner, Gerard G. Lambert, Yuhui Ni, and Jiwu Wang as inventors.  Pfizer further admits that on its face, the '221 patent is entitled "Monomeric yellow-green fluorescent protein from cephalochordate" and identifies an issuance date of March 5, 2019.  Pfizer further admits that Exhibit 1 to the First Amended Complaint is a document that purports to be a copy of the '221 patent.  Pfizer otherwise denies the allegations of paragraph 25.

26.    The '221 Patent will expire on or about December 8, 2033 if all maintenance fees are timely paid (*i.e.* in approximately 13 years).

**ANSWER:**  Paragraph 26 states legal conclusions to which no response is required.

27.    Although the invention(s) set forth in the '221 Patent are best described by its claims, the '221 Patent is generally directed to isolated nucleic acid sequences

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

1   encoding a monomeric green/yellow fluorescent proteins, and fragments and
2   derivatives thereof.

3       **ANSWER:**  Paragraph 27 purports to characterize the '221 patent, which
4   speaks for itself.  To the extent a response is required, Pfizer admits that the claims of
5   the '221 patent are required to particularly point out and distinctly claim the subject
6   matter which the putative inventor or joint inventors regard as the invention, and
7   otherwise denies the allegations of paragraph 27.

8       28.    On April 28, 2014, the Inventors assigned the yet-to-be-issued '221
9   Patent to Allele.  A true and correct copy of the assignment is attached hereto as
10  Exhibit 2.

11      **ANSWER:**  Pfizer admits that a document purporting to be an assignment of
12  application no. 13/950,239 from Nathan C. Shaner, Gerard G. Lambert, Yuhui Ni, and
13  Jiwu Wang to Allele Biotechnology & Pharmaceuticals, Inc. is attached to the First
14  Amended Complaint as Exhibit 2, which document speaks for itself.  Pfizer otherwise
15  lacks knowledge and information sufficient to form a belief as to the truth of the
16  allegations in paragraph 28, and therefore denies them.

17      29.    The claims of the '221 Patent encompass Allele's mNeonGreen product,
18  which is a fluorescent protein used as a biological tag in genetic engineering work.
19  mNeonGreen is a monomeric protein that was derived from a tetrameric wild-type
20  yellow-green fluorescent protein isolated from the cephalochordate *Branchiostoma*
21  *lanceolatum* (a "lanYFP"). In nature, two lanYFP monomers form a dimer and two
22  dimers form an "obligate" (mandatory) tetramer. When exposed to certain
23  wavelengths of light, the lanYFP tetramer will brightly fluoresce.  However, the
24  tetramer is large and often unsuitable as a fluorescent tag. The engineered
25  mNeonGreen monomer is among the brightest and most stable monomeric fluorescent
26  reporter proteins currently known. As described in the patent, the mNeonGreen
27  proteins "have exceptional utility as a biomarker and/or protein fusion tag, and have

28

1  shown great usefulness as a FRET acceptor for the newest generation of cyan

2  fluorescent proteins."

3      **ANSWER:**  The allegations in the first sentence of paragraph 29 state a legal

4  conclusion, to which no response is required.  The last sentence of paragraph 29

5  purports to quote the '221 patent, which speaks for itself.  Pfizer otherwise lacks

6  knowledge and information sufficient to form a belief as to the truth of the allegations

7  in paragraph 29 and therefore denies them.

8      30.    The resulting mNeonGreen, synthetic lanYFP fluorescent protein

9  described and claimed in the '221 Patent is widely recognized as a breakthrough, is

10  used throughout the industry, and has been called the "King of fluorescent proteins"

11  by Professor Amy Palmer, at the University of Colorado Boulder. Applications

12  involving infectious viruses, such as COVID-19 vaccine work, are high concentration

13  environments perfectly suited for mNeonGreen, as broadly recognized.  *See,* Xie, et

14  al*, Cell Host & Microbe 27, 841-848* (May 13, 2020) and Muruato, et al., bioRxiv

15  preprint: https://doi.org/10.1101/2020.05.21.109546 (May 22, 2020), true and correct

16  copies of each attached hereto as Exhibit 3 (hereafter "Cell Host Article") and Exhibit

17  4, respectively.

18      **ANSWER:**  Pfizer denies the allegations of paragraph 30.

19      31.    The commercial protein of mNeonGreen corresponds to SEQ ID NO:1 of

20  the patent (claims 1, 3, 4 and 5). Allele used the nucleic acid of SEQ ID NO:2 (claim

21  3) to express this protein.

22      **ANSWER:**  Pfizer lacks knowledge and information sufficient to form a belief

23  as to the truth of the allegations of paragraph 31, and therefore denies them.

24      32.    The '221 Patent (and the mNeonGreen technology covered by it) is not a

25  patented invention subject to review by the FDA or any Federal law which regulates

26  the manufacture, use, or sale of drugs or veterinary biological products. As a result,

27  the '221 Patent is also ineligible for patent term extension under 35 U.S.C. § 156.

28

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

1  **ANSWER:** Paragraph 32 states legal conclusions to which no response is
2  required.  To the extent a response is required, Pfizer lacks knowledge and
3  information as to what is meant by "the mNeonGreen technology" sufficient to form a
4  belief as to the truth of the allegations of paragraph 32, and therefore denies them.

5  33.    In practice, mNeonGreen facilitates quick, targeted, and incredibly
6  precise research in many different fields, including during investigation and
7  winnowing of vaccine candidates to treat COVID-19, as well as post-authorization
8  marketing and research for independent commercial purposes.  The fluorescent tagged
9  therapeutic proteins associated with mNeonGreen are constructed to determine
10 receptor expression and dynamics with therapeutic outcome for high-throughput
11 systems, as in the present global race for a vaccine to COVID-19.  A key hurdle in
12 developing a vaccine for infectious diseases, such as the novel coronavirus of
13 COVID-19, is narrowing many candidates to a manageable amount by determining
14 therapeutic outcome of potential drug candidates against COVID-19 strains,
15 something which mNeonGreen readily solves.

16 **ANSWER:** Pfizer lacks knowledge and information sufficient to form a belief
17 as to the truth of the allegations in the first and second sentences of paragraph 33, and
18 therefore denies them.  Pfizer otherwise denies the allegations of paragraph 33.

19 34.    Where there is a race against time, weaker fluorescent alternatives are
20 simply no option.  mNeonGreen was the critical link in Defendants' COVID-19
21 vaccine development for narrowing many candidates to a manageable amount, its
22 Phase I, II, and III trial success, authorization by the FDA, commercial use
23 authorizations overseas thereafter, and on information and belief, obtaining marketing
24 data as to effectiveness against other strains of the COVID-19 virus. This research tool
25 is even more critical in a global pandemic where the need for a vaccine to save lives
26 has never been more crucial.  While Defendants were required to obtain a commercial
27 license from Allele, Defendants never sought a license with Allele or even contacted
28 them.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

1    **ANSWER:** Pfizer denies the allegations of paragraph 34.

2    **Accused Products**

3    35.    In early 2020, Defendants Pfizer and BioNTech jointly agreed to develop

4    and bring to market a COVID-19 vaccine, both within and outside the US.

5    **ANSWER:** Pfizer admits that Pfizer and BioNTech SE announced an

6    agreement to globally co-develop a COVID-19 vaccine in March of 2020.  Pfizer

7    otherwise denies the allegations of paragraph 35.

8    36.    Defendants needed a way to safely, reliably, and rapidly evaluate a larger

9    number of vaccine candidates and therefore used mNeonGreen in a reporter assay to

10    narrow those candidates down to only four (4), and then to one.

11    **ANSWER:** Pfizer denies the allegations of paragraph 36.

12    37.    On or about April 29, 2020, Defendants initiated Phase I of their COVID-

13    19 vaccine trial, in part to further evaluate and narrow COVID-19 vaccine candidates.

14    Phase II of their COVID-19 trial initiated on June 19, 2020 to further evaluate vaccine

15    candidates with an expanded cohort. Throughout each of Phases I and II of their

16    COVID-19 vaccine trial, Defendants Pfizer and BioNTech analyzed patient samples

17    using an mNeonGreen neutralization assay to evaluate COVID-19 neutralizing

18    antibody levels.  The FDA did not require that Defendants use a neutralization assay

19    with mNeonGreen, but Defendants did so anyway.

20    **ANSWER:** Pfizer denies the allegations of the first three sentences of

21    paragraph 37.  The fourth sentence of paragraph 37 states a legal conclusion to which

22    no response is required.  To the extent further response is required, Pfizer otherwise

23    denies the allegations of paragraph 37.

24    38.    For example, BioNTech admitted it used mNeonGreen technology in

25    Phases I and II of its COVID-19 vaccine trial to assess "various BNT162 mRNA

26    vaccine candidates." *See,* SEC Form 6K dated July 1, 2020, a true and correct copy of

27    which is attached hereto as Exhibit 5.

28    **ANSWER:** Pfizer denies the allegations of paragraph 38.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

39.     At page 21 of Form 6K shown in Exhibit 5 at Page 73, BioNTech states, "[t]he SARS-CoV-2 neutralization assay used a previously described strain of SARSCoV-2 (USA_WA1/2020) that had been rescued by reverse genetics and engineered by the **insertion of an mNeonGreen (mNG) gene** into open reading frame 7 of the viral genome." (Emphasis added.)  Stated differently, the COVID-19 vaccine of Defendants' COVID-19 vaccine trial was discovered and researched by Defendants using an mNeonGreen neutralization assay, a research tool built on a DNA construct with a monomeric mNeonGreen protein, patented by Allele, inserted into the recombinant and infectious SARS-CoV-2 virus.

**ANSWER:**  The allegations of the first sentence of paragraph 39 purport to quote Exhibit 5, which speaks for itself.  Pfizer lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 39 and therefore denies them.

40.     mNeonGreen was not, and is not, regulated by the FDA or any government agency or federal law, particularly those involving drugs, biologics, or medical devices or implicated by 35 U.S.C. § 271(e)(1). Allele's '221 Patent covering mNeonGreen was not, and is not, eligible for patent term extension under 35 U.S.C. § 156.  The FDA also did not require that Defendants use the mNeonGreen Neutralization Assay in their vaccine work—Defendants chose to.

**ANSWER:**  The allegations of paragraph 40 state legal conclusions to which no response is required.  To the extent a response is required, Pfizer lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 40 and therefore denies them.

41.     Further, Defendant BioNTech's Form 6K includes a copy of Mulligan et al., Phase I/II Study to Describe the Safety and Immunogenicity of a COVID-19 RNA Vaccine Candidate (BNT162b1) in Adults 18 to 55 Years of Age: Interim Report

1  ("Mulligan"), a medRxiv preprint made available on July 1, 2020 at

2  https://doi.org/10.1101/2020.06.30.20142570.

3  **ANSWER:**  Paragraph 41 purports to characterize Exhibit 5, which speaks for

4  itself.  Pfizer otherwise lacks knowledge and information sufficient to form a belief as

5  to the truth of the allegations of paragraph 41 and therefore denies them.

6  42.   Mulligan contains additional information about BioNTech's work. *See*

7  Exhibit 5 Page 62 (Exhibit 99.2, Mulligan p. 1). For example, Mulligan reported dose-

8  dependent titers of neutralizing antibodies in human subjects with safe (mild to

9  moderate) adverse reactions:

10  The SARS-CoV-2 neutralization assay used a previously
    described strain of SARS-CoV-2 (USA_WA1/2020) that
11  had been rescued by reverse genetics and engineered by the
    **insertion of an mNeonGreen (mNG) gene** into open
12  reading frame 7 of the viral genome.[20] This reporter virus
    generates similar plaque morphologies and indistinguishable
13  growth curves from wild-type virus. Viral master stocks
    used for the neutralization assay were grown in Vero E6
14  cells as previously described.[20]

15  Exhibit 5 Page 73 (at Exhibit 99.2, page 12).

16  **ANSWER:**  Paragraph 42 purports to quote and characterize Exhibit 5, which

17  speaks for itself.  Pfizer otherwise denies the allegations of paragraph 42.

18  43.   In other words, while not required by the FDA to use mNeonGreen,

19  BioNTech admits in Exhibit 5 that it used in Phases I and II of their COVID-19

20  vaccine trial the DNA construct described in the Cell Host Article, which contains and

21  is fundamentally based on the mNeonGreen research tool, to research its SARSCoV-

22  2 vaccine candidates.

23  **ANSWER:**  The allegations of paragraph 43 contain a legal conclusion to

24  which no response is required.  Pfizer otherwise denies the allegations of paragraph

25  43.

26  44.   Defendants continued using the infringing DNA construct described in

27  the Cell Host Article, including for example in Phase III trials and for commercial

28  purposes such as validation, quality control, promotion, and marketing advantage.

17        Case No. 20-cv-01958-H (AHG)

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

1    **ANSWER:** Pfizer denies the allegations of paragraph 44.

2    45.    Defendants have not used mNeonGreen in order to enter the market with

3    a product that competes with mNeonGreen. mNeonGreen is not a patented drug with a

4    soon-to-expire patent term and Defendants did not need to establish bioequivalence of

5    a generic substitute of mNeonGreen to enter the market with their vaccine).

6    Defendants have not conducted appropriately limited safe harbor testing so that their

7    vaccine could be pre-approved and ready to launch as soon as the '221 Patent expires.

8    **ANSWER:**  Pfizer admits that it has not entered any market with any product

9    that competes with mNeonGreen.  Pfizer lacks knowledge and information sufficient

10    to form a belief as to the truth of the allegations of the second sentence of paragraph

11    45 regarding "mNeonGreen is not a patented drug with a soon-to-expire patent term"

12    or the existence of a "generic substitute of mNeonGreen" and therefore denies them.

13    Pfizer otherwise denies the allegations of paragraph 45.

14    46.    On the contrary, Defendants have an FDA authorization for their own

15    product, have launched, did infringe, and on information and belief continue to

16    infringe, openly and intentionally, many years before the '221 Patent will expire, in

17    total disregard for Plaintiff's rights and Plaintiff's crucial contribution to the success

18    of Defendants' vaccine.

19    **ANSWER:** Pfizer denies the allegations of paragraph 46.

20    47.    Using the data premised on Defendants' use of mNeonGreen, Defendants

21    have successfully received commercial authorizations for their COVID-19 vaccine

22    outside the United States, and foreign sales are projected to comprise the majority of

23    Defendants' COVID-19 vaccine sales. For example, and without limitation,

24    Defendants received commercial authorization to enter into contracts and distribute

25    their COVID-19 vaccine in the European Union, the United Kingdom, South Africa,

26    Japan, Canada, Mexico, Colombia, Saudi Arabia, Turkey, South Korea, Australia, and

27    Argentina.  With each passing day, more foreign regulators approve of Defendants'

28    vaccine based on the data incorporating the unauthorized use of mNeonGreen—*i.e.*

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

1  uses of mNeonGreen not solely and reasonably related to the development and

2  submission of information to the FDA in the United States—but to procure lucrative

3  vaccine contracts. Defendants have misused Plaintiff's '221 Patent and mNeonGreen

4  without authorization to develop a patented product of their own.

5      **ANSWER:**  Pfizer admits that authorizations have been provided for the

6  distribution of the Pfizer-BioNTech COVID-19 vaccine in certain areas outside the

7  United States.  Pfizer otherwise denies the allegations of paragraph 47.

8      48.    Defendants forecasted producing globally up to 50 million vaccine doses

9  in 2020, up to 1.3 billion doses in 2021, and corresponding sales numbers

10 approximating $26.44 billion (far higher than even their revised FTC projections),

11 having the great benefit of the very quick and confident progress afforded through

12 their unauthorized use of mNeonGreen and resulting in Defendants' success as the

13 first to market an effective COVID-19 vaccine.

14     **ANSWER:** Pfizer denies the allegations of paragraph 48.

15     49.    On information and belief, while not required by the FDA and instead for

16 marketing purposes, Defendants have continued to use the mNeonGreen neutralization

17 assay as a research tool to evaluate their commercially authorized COVID-19 vaccine

18 against at least 20 new COVID-19 strains.

19     **ANSWER:** The first sentence of paragraph 49 contains a legal conclusion to

20 which no response is required.  Pfizer otherwise denies the allegations of

21 paragraph 49.

22     50.    Simultaneously, in order to prevent other market participants from

23 manufacturing or distributing BNT162 or another vaccine built off Defendants'

24 results, Defendants have (1) applied for patent coverage related to their COVID-19

25 vaccine efforts stemming from their mNeonGreen uses, and (2) forcefully opposed the

26 World Health Organization's initiative to expand vaccine access to poor countries by

27 granting compulsory patent rights or otherwise relaxing patent laws.

28     **ANSWER:**  Pfizer denies the allegations of paragraph 50.

1

## Defendants Used and Continue Using the MNeonGreen Neutralization Assay At All Times

2

3        51.        Scientists from UTMB, who provided the mNeonGreen-SARS-CoV-2

4   DNA construct to Defendants, reported an "urgently needed ... fluorescent-based

5   SARS-CoV-2 neutralization assay" with "gold standard" results. *See* Exhibit 4 Page

6   40). The assay of Exhibit 4 "was built on a stable mNeonGreen SARS-CoV-2"

7   reporter virus (*Id.*, at 41) (citing the Cell Host Article) and is "superior ... because it

8   measures functional SARS-CoV-2 neutralizing activity…. [T]he mNeonGreen

9   reporter assay [aka mNeonGreen neutralization assay] offers a rapid, high throughput

10  platform to test COVID-19 patient sera not previously available." *Id.*, at 43-44.  The

11  Cell Host Article also evidences that UTMB made a "reverse genetics system" for

12  SARS-CoV-2 by assembling seven cDNA fragments into a full-genome cDNA of the

13  virus. The recombinant virus has been distinguished from wild-type SARS-CoV-2.

14  *See* Cell Host Article at Exhibit 3 at 29, 31 (842, Fig. 2E). RNA transcribed from this

15  cDNA produced a highly infectious virus that, according to UTMB, "recapitulates the

16  replication kinetics of the original clinical isolate." *Id.*, at 29.

17       **ANSWER:** Paragraph 51 purports to quote Exhibits 3 and 4, which speak for

18  themselves.  Pfizer otherwise denies the allegations of paragraph 51.

19

20       52.        mNeonGreen was incorporated into this cDNA to make a reporter virus:

21       **We generated a stable mNeonGreen SARS-CoV-2 (icSARS-CoV-2-mNG)** by introducing this reporter gene

22       into ORF7 of the viral genome. icSARS-CoV-2-mNG was successfully used to evaluate the antiviral activities of

23       interferon (IFN). Collectively, the reverse genetic system and reporter virus provide key reagents to study SARSCoV-

24       2 and develop countermeasures.

25  Cell Host Article at Exhibit 3 at 28 (841 (Summary)), Exhibit 3 at 30, 32 (843, Fig.

26  3A).

27

28

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

**ANSWER:**  The allegations of paragraph 52 purport to quote and characterize Exhibit 3, which speaks for itself.  Pfizer otherwise denies the allegations of paragraph 52.

53.     While the Cell Host Article describes an mNeonGreen neutralization assay, for SARS-CoV-2, it emphasizes the robustness of using mNeonGreen as a gold standard tool for rapid characterization and development of "countermeasures" for a variety of emerging infections.  As a representative example of such emerging viruses, the authors of the Cell Host Article developed a SARS-CoV-2 reporter tool, the aforementioned mNeonGreen neutralization assay, with the "**mNeonGreen virus [] be[ing] reliably used** to study viral replication and pathogenesis as well as to develop vaccines and antiviral drugs." *Id.* at 29, 30. The authors further describe the mNeonGreen reporter virus as "a reliable surrogate for high-throughput drug discovery" that "represents a major tool for the research community and significantly advances opportunities for countermeasure development for COVID-19." *Id*. at 34.

**ANSWER:** Paragraph 53 purports to quote and characterize Exhibit 3, which speaks for itself.  Pfizer otherwise denies the allegations of paragraph 53.

54.     The Key Resources Table of the Cell Host Article lists "**synthesized mNeonGreen gene (sequence optimized)**" and refers to a publication from 2013 by the Inventors which corresponds to the '221 Patent. See, Cell Host Article at e1, e2.

**ANSWER**: Paragraph 54 purports to characterize Exhibit 3, which speaks for itself.  Pfizer otherwise denies the allegations of paragraph 54.

55.     mNeonGreen in UTMB's construct is identical to SEQ ID NO:1 of the '221 patent.

**ANSWER:**  Pfizer denies the allegations of paragraph 55.

56.     Mulligan of Exhibit 5 also states, "BioNTech is the Sponsor of the study" and that "Pfizer was responsible for the design, data collection, data analysis, data interpretation, and writing of the report," confirming Defendants' intimate involvement in every aspect of the study. *See* Exhibits 6, 7, and 8 with true and correct

copies of each attached hereto which confirm mNeonGreen's continued use by Defendants in their development of a COVID-19 vaccine. Defendants directly used the invention patented in the '221 Patent, and for which Defendants have since obtained hefty government grants and sales. Exhibit 5 Page 66 (at Exhibit 99.2 p. 5).

**ANSWER:** The allegations of the first sentence of paragraph 56 purport to quote and characterize Exhibit 5, which speaks for itself. The second sentence of paragraph 56 purports to characterize exhibits 6, 7, and 8, which speak for themselves. Pfizer otherwise denies the allegations of paragraph 56.

57. While not required by the FDA, Defendants, on information and belief, continue using the mNeonGreen neutralization assay or variant thereof, which includes mNeonGreen, to research SARS-CoV-2-neutralizing antibody levels against at least 20 new COVID-19 strains. The purpose of this infringing use is to compete in the marketplace against other COVID-19 vaccines, by highlighting to potential purchasers and users of the vaccine added benefits of using Defendant's BNT162 vaccine instead of other vaccines. These uses are referred to herein as "Post-Approval Marketing Use."

**ANSWER:** The first sentence of paragraph 57 contains a legal conclusion to which no response is required. Pfizer otherwise denies the allegations of paragraph 57.

58. A protein made using the DNA construct used by Defendants has "at least one" of the mutations in claim 1, at least three of the mutations in claim 4, at least 95% sequence identity according to claims 1, 2, and 4; has at least 97% sequence identity according to claim 5, and has a monomer according to claim 2.

**ANSWER:** Pfizer denies the allegations of paragraph 58.

59. Therefore, the mNeonGreen protein used by Defendants, including in mNeonGreen neutralization assays, literally infringes at least claims 1, 2, 4 and 5 of the '221 Patent.

**ANSWER:** Pfizer denies the allegations of paragraph 59.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

60.     At no time has Allele granted Defendants authorization, license, or permission to practice the inventions claimed in the '221 Patent.

**ANSWER:**  Pfizer denies that it has practiced or is practicing the alleged inventions claimed in the '221 patent, and otherwise denies the allegations of paragraph 60.

61.     Because of this continued infringement, Defendants were able to identify their COVID-19 vaccine candidate, BNT162, as the most promising candidate to commercialize and be the first COVID-19 vaccine authorized for commercial use in the United States and worldwide.

**ANSWER:** Pfizer denies the allegations of paragraph 61.

### Defendants' Willful Infringement

62.     The '221 Patent was issued by the United States Patent and Trademark Office.  As an issued patent, the '221 Patent has a presumption of validity per 35 U.S.C. § 282.

**ANSWER:** The allegations of paragraph 62 set forth legal conclusions to which no response is required.  To the extent a response is required, Pfizer admits that the '221 patent on its face recites an issuance date.  Pfizer denies that the '221 patent is valid and otherwise denies the allegations of paragraph 62.

63.     At least claims 1, 2, 4 and 5 of the '221 Patent have all of their limitations met by the Accused Product, which thus infringes the '221 Patent.

**ANSWER:** Pfizer denies the allegations of paragraph 63.

64.     Since at least as early as May 2020, Defendants have been aware of the '221 Patent, and have had actual knowledge of the '221 Patent and the obvious risk of infringement by continued use of mNeonGreen throughout their development of their COVID-19 vaccine candidate in the United States.

**ANSWER:**  Pfizer denies the allegations of paragraph 64.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

1    65.    Despite their knowledge of the obvious risk of infringement of the '221

2    Patent, Defendants since at least as early as May of 2020 continued using Allele's

3    mNeonGreen throughout their COVID-19 vaccine trials and, on information and

4    belief, after their post-FDA authorization of commercial use of their COVID-19

5    vaccine.

6    **ANSWER:** Pfizer denies the allegations of paragraph 65.

7    66.    Defendants' continued infringement was and is subjectively reckless and

8    intentional. Defendants have infringed the '221 Patent in a willful and egregious

9    manner, in wanton disregard of the '221 Patent.

10   **ANSWER:** Pfizer denies the allegations of paragraph 66.

11   <u>**FIRST CLAIM FOR RELIEF**</u>

12   (Infringement of the '221 Patent Against All Defendants)

13   67.    Allele realleges and incorporates by reference all paragraphs in this

14   Complaint above as if fully set forth herein.

15   **ANSWER:** Pfizer realleges and incorporates by reference all paragraphs in its

16   Answer above as if fully set forth herein.

17   68.    This is a claim for patent infringement and arises under the Patent Laws

18   of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

19   **ANSWER:**  The allegations of paragraph 68 purport to characterize Allele's

20   First Amended Complaint, which speaks for itself, and set forth legal conclusions to

21   which no response is required.  To the extent a response is required, Pfizer denies that

22   Pfizer has infringed the '221 patent and further deny that Allele is entitled to any of

23   the relief that it seeks.  Pfizer otherwise denies that Allele states a claim for patent

24   infringement arising under the Patent Laws of the United States and, in particular,

25   under 35 U.S.C. §§ 271, *et seq*.

26   69.    Defendants have in the past infringed and continue to infringe the '221

27   Patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or

28   selling, in the United States, or importing into the United States, mNeonGreen with its

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

SARS-CoV-2 neutralization assay and DNA construct that infringes at least claims 1, 2, 4, and 5, of the '221 Patent.

**ANSWER:** Pfizer denies the allegations of paragraph 69.

70.     Allele is informed and believes that Defendants have infringed, and continue to infringe, the '221 patent by making, using, selling, offering for sale and/or licensing products covered by at least claims 1, 2, 4, and 5 of the '221 Patent without Allele's authorization or consent.

**ANSWER:** Pfizer lacks knowledge and information sufficient to form a belief as to what Allele believes, and therefore Pfizer denies the allegations of paragraph 70.

71.     Defendants have in the past infringed and continue to infringe the '221 Patent in violation of 35 U.S.C. § 271(f) because Defendants supply or cause to be supplied from the United States all or a substantial portion of the patented invention for combination outside the United States, including use of mNeonGreen with its SARS-CoV-2 neutralization assay and DNA construct throughout their COVID-19 vaccine trial in the United States and outside the United States, in a manner that would infringe at least claims 1, 2, 4, and 5 of the '221 Patent, if such combination occurred within the United States.

**ANSWER:** Pfizer denies the allegations of paragraph 71.

72.     Section 287 of Chapter 35 of the U.S.C. has been satisfied.

**ANSWER:** Paragraph 72 sets forth a legal conclusion to which no response is required.  To the extent a response is required, Pfizer denies that Allele has established that Section 287 of Chapter 35 of the U.S.C. was satisfied.

73.     Defendants' infringing conduct will continue unless enjoined by this Court.

**ANSWER:** Pfizer denies the allegations of paragraph 73.

74.     Defendants' acts of direct infringement have been, and continue to be, willful and deliberate and Defendants' acts of indirect infringement were, and continue to be, knowing and intentional.

**ANSWER:** Pfizer denies the allegations of paragraph 74.

75.     Allele is entitled to an award of damages adequate to compensate Allele for patent infringement, as well as prejudgment interest from the date the infringement began, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284.

**ANSWER:** Pfizer denies the allegations of paragraph 75.

76.     Allele is entitled to an award of treble damages for the period of any willful infringement pursuant to 35 U.S.C. § 284.

**ANSWER:** Pfizer denies the allegations of paragraph 76.

77.     Allele is entitled to a finding that this case is exceptional and an award of interest, costs and attorneys' fees incurred by Allele in prosecuting this action as provided by 35 U.S.C. § 285.

**ANSWER:** Pfizer denies the allegations of paragraph 77.

78.     Allele is entitled to an award of pre-judgment and post-judgment interest as provided by law.

**ANSWER:** Pfizer denies the allegations of paragraph 78.

79.     Allele is entitled to such other and further relief as this Court or a jury may deem just and proper.

**ANSWER:** Pfizer denies the allegations of paragraph 79, and denies that Allele is entitled to any relief whatsoever.

## ALLELE'S PRAYER FOR RELIEF

The "WHEREFORE" paragraphs following paragraph 79 state Allele's Prayer for Relief, to which no response is required.  To the extent a response is required, Pfizer denies that Allele is entitled to any of the relief in the Prayer for Relief, or any relief whatsoever.

\*          \*          \*

Any allegation in the First Amended Complaint not expressly admitted herein is hereby denied.  All allegations in the section headers of Allele's First Amended Complaint are hereby denied.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

## **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**
**(Invalidity of the '221 Patent)**

80.    The claims of the '221 patent are invalid under one or more grounds set forth in Title 35 of the United States Code, including without limitation, (a) as anticipated pursuant to section 102 of Title 35 of the United States Code; (b) as obvious pursuant to section 103 of Title 35 of the United States Code; (c) as indefinite, not enabled, and not described pursuant to section 112 of Title 35 of the United States Code; and (d) as directed to patent ineligible subject matter under section 101 of Title 35 of the United States Code.

### **SECOND AFFIRMATIVE DEFENSE**
**(Non-infringement of the '221 patent)**

81.    The manufacture, use, offer to sell, sale, and/or importation of the Pfizer-BioNTech COVID-19 vaccine does not infringe any valid claim of the '221 patent.

82.    The alleged use of a neutralization assay did not infringe any valid claim of the '221 patent.

83.    Allele fails to state a claim for patent infringement arising under the Patent Laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

### **THIRD AFFIRMATIVE DEFENSE**
**(Prosecution History Estoppel)**

84.    The claims against Pfizer are barred, in whole or in part, by prosecution history estoppel.

### **FOURTH AFFIRMATIVE DEFENSE**
**(Failure to Mark)**

85.    Allele's claims for damages prior to the commencement of this action for alleged infringement of the '221 patent are barred by 35 U.S.C. § 287.

**FIFTH AFFIRMATIVE DEFENSE**
**(Patent Misuse)**

86.    Allele's claims for infringement against Pfizer are barred in whole or in part by the doctrine of patent misuse.

**SIXTH AFFIRMATIVE DEFENSE**
**(35 U.S.C. § 271(e)(1))**

87.    Allele's claims for infringement against Pfizer are barred by the safe harbor of 35 U.S.C. § 271(e)(1).

**SEVENTH AFFIRMATIVE DEFENSE**
**(Equitable Estoppel)**

88.    Allele's claims for infringement against Pfizer are barred by the doctrine of equitable estoppel.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Implied License)**

89.    Allele's claims for infringement against Pfizer are barred by the doctrine of implied license.

**NINTH AFFIRMATIVE DEFENSE**
**(Patent Exhaustion)**

90.    Allele's claims for infringement against Pfizer are barred by the doctrine of patent exhaustion.

**TENTH AFFIRMATIVE DEFENSE**
**(Acquiescence)**

91.    Allele's claims for infringement against Pfizer are barred by the doctrine of acquiescence.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

92.    Allele's claims for infringement against Pfizer are barred by the doctrine of unclean hands.

**WHEREFORE,** Pfizer respectfully requests the following relief:

(a)    An order dismissing each of Allele's claims with prejudice;

(b)    A judgment that Pfizer has not infringed the '221 patent.

(c)    A judgment that the '221 patent is invalid.

(d)    A declaration that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

(e)    An award of Pfizer's costs and expenses in this action; and

(f)    Such further and other relief as this Court may deem just and proper.

## COUNTERCLAIMS

Without admitting any of the allegations of Plaintiff Allele Biotechnology and Pharmaceuticals, Inc. ("Allele's") other than those expressly admitted herein, and without prejudice to Counterclaim-Plaintiff Pfizer Inc.'s ("Pfizer") right to plead additional counterclaims as the facts of the matter warrant, Pfizer asserts the following counterclaims against Counterclaim-Defendant Allele.

### Parties

1.    Counterclaim-Plaintiff Pfizer is a company organized and existing under the laws of the State of Delaware with its principal place of business at 235 East 42nd Street, New York, NY 10017.

2.    Upon information and belief, and based on Counterclaim-Defendant's allegations, Counterclaim-Defendant Allele is a California corporation with its principal place of business being, 6404 Nancy Ridge Drive, San Diego, California 92121.

### Background, Jurisdiction and Venue

3.    Pfizer seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  The court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.    Venue is proper under 28 U.S.C. §§ 1391 and 1400(b), and by Counterclaim-Defendant's choice of forum.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

5.      This action is based upon an actual controversy between the parties arising from allegations of infringement of the '221 patent.

6.      Pfizer and BioNTech SE announced an agreement to globally co-develop a COVID-19 vaccine in March of 2020.  The vaccine is an mRNA-based vaccine, and received an Emergency Use Authorization from the FDA on December 11, 2020.

7.      On October 5, 2020, Allele sued BioNTech SE and BioNTech US and Counterclaim-Plaintiff Pfizer for infringement of the '221 patent, alleging that Pfizer, BioNTech SE and BioNTech US had used the invention of the '221 patent in an infringing manner in various alleged preclinical, clinical, and post-marketing capacities.

8.      Prior to October 5, 2020, Allele did not provide Pfizer with any notice of alleged infringement of the '221 patent.

9.      Prior to October 5, 2020, Allele was aware of the conduct of UTMB that is alleged in Allele's Amended Complaint.  Allele never sued UTMB for patent infringement or sought a license from that entity.

10.     Allele has never developed a COVID-19 vaccine and has never partnered with any company to successfully develop a COVID-19 vaccine.

11.     mNeonGreen is not a COVID-19 vaccine.  mNeonGreen is not included in any COVID-19 vaccine.

12.     Allele's website, as of October 5, 2020, offered the mNeonGreen Advanced User License, by which an academic laboratory could "use mNeonGreen" and receive "a basic E. Coli expression plasmid" and "access to any mNeonGreen fusions and constructs carried by Allele Biotechnology."  The price of the license for mNeonGreen was six hundred dollars ($600.00).

13.     Pfizer has denied that it has infringed, continues to infringe, or will infringe any valid and enforceable claim of the '221 patent.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

14.     In view of the foregoing, a conflict of asserted rights has arisen between Pfizer and Counterclaim-Defendant with respect to the noninfringement and invalidity of the relevant claims of the '221 patent.

15.     Pfizer has further asserted that the '221 patent is invalid for failure to satisfy one or more of the provisions of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or the doctrine of obviousness type double patenting and/or any other judicially created requirements for patentability and enforceability of patent, and the defenses recognized in 35 U.S.C. § 282.

## COUNT I – DECLARATION OF NONINFRINGEMENT

16.     Pfizer realleges and incorporates by reference paragraphs 1 through 15 of its Counterclaims as if fully set forth herein.

17.     This Counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. 28 §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy having adverse legal interest of sufficient immediacy and reality to warrant the issuance of a declaration of rights by the Court exists between Pfizer and Counterclaim Defendant Allele concerning infringement of the '221 patent.

18.     Counterclaim Defendant has accused Pfizer of activities that it claims infringe the '221 patent ("Accused Activities").

19.     Pfizer denies that it has infringed any valid and enforceable claim of the '221 patent, including for at least the reason that it has not made, used, offered to sell, sold, or imported any "non-naturally occurring isolated monomeric or dimeric lanYFP fluorescent protein" that meets the limitations of the asserted claims of the '221 patent.

20.     Pfizer is entitled to a judicial determination that it has not infringed and will not infringe any valid claim of the '221 patent, including by performance of the alleged Accused Activities.

## COUNT II – DECLARATION OF INVALIDITY

21.     Pfizer realleges and incorporates by reference paragraphs 1 through 20 of its Counterclaims as if fully set forth herein.

22.     Claims 1-2 and 4-5 of the '221 patent are invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 et seq., including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103, 112, and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Pfizer prays for the following relief:

A. That the Court order the Complaint dismissed with prejudice and judgment be entered in favor of Pfizer;

B. That a judgment be entered declaring that Pfizer's conduct has not infringed the '221 patent;

C. That a judgment be entered declaring claims 1-2 and 4-5 of the '221 patent invalid;

D. That Allele and its agents, representatives, attorneys, and those persons in active concert or participation with them who receive actual notice thereof, be preliminarily and permanently enjoined from threatening or initiating infringement litigation against Pfizer or any of its customers, dealers, or suppliers, or any prospective or present sellers, dealers, distributors, or customers of Pfizer, or charging any of them either orally or in writing with infringement of the '221 patent.

E. That a judgment be entered, declaring that this action is an exceptional case within the meaning of 35 U.S.C. § 285 and that Pfizer is therefore entitled to recover its reasonable attorneys' fees upon prevailing in this action;

G. That Pfizer be awarded costs, attorney's fees, and other relief, both legal and equitable, to which it may be justly entitled; and

H. That Pfizer be awarded such other and further relief as is just and proper.

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT

Respectfully submitted,

*/s/ David J. Noonan*

**NOONAN LANCE BOYER &
BANACH**
David J. Noonan (SBN 55966)
701 Island Avenue, Suite 400
San Diego, CA 92101
Telephone: 619-780-0880
Facsimile: 619-780-0877

**WILLIAMS & CONNOLLY LLP**
Thomas H. L. Selby*
Stanley E. Fisher*
Charles L. McCloud*
Michael Xun Liu*
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202-434-5000
Facsimile: 202-434-5029
* Admitted pro hac vice

*Attorneys for Defendant Pfizer Inc.*

DEFENDANT PFIZER'S ANSWER TO FIRST AMENDED COMPLAINT